UNITED STATES of America, Appellee,

v.

**Robert Thomas PIATT, Appellant.**

**No. 81–1966.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1982.

Decided June 4, 1982.

---

Martin, Bahn & Cervantes, Mark R. Bahn, St. Louis, Mo., for Robert Piatt.

Thomas E. Dittmeier, U. S. Atty., Robert T. Haar, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and STEPHENSON and GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Robert Thomas Piatt appeals his conviction on three counts arising out of the transportation and distribution of approximately two hundred pounds of marijuana. This appeal raises issues of whether the district court [1] abused its discretion by rereading some but not all of the jury instructions in response to the jury's questions, whether out-of-court statements by coconspirators were admissible against Piatt, whether the district court properly denied Piatt's motion for severance, and whether the government was obliged to disclose the

---

* The Honorable John R. Gibson was United States District Judge for the Western District of Missouri at the time this case was submitted, sitting by designation.

1. The Honorable Clyde S. Cahill, Jr., United States District Judge for the Eastern District of Missouri.

identity of witness Roberds before trial. Finding no error in any of these respects, we affirm.

In April 1981, Piatt approached Michael West in Fort Lauderdale, Florida and offered West $1,000 if West would help Piatt drive to St. Louis, Missouri in West's Pontiac Grand Prix. Before departing for Missouri, Piatt borrowed West's car twice. After he returned the second time, the two left Florida with something loaded in the back seat covered with a sheet. They arrived in St. Louis and checked into the Holiday Inn West. Michael Torian and James Sever came to the Holiday Inn West and, after conversations with Piatt, Torian obtained the keys to the Grand Prix. From the Grand Prix, Torian and Sever unloaded two bales of marijuana totaling fifty pounds at Sever's house and then delivered two bales of approximately eighty-five pounds of marijuana at Nathaniel Yancy's house. Twenty pounds of marijuana remained under the sheet behind the front passenger seat of the vehicle and a bag of fifty-one pounds of marijuana remained in the trunk, all of which was discovered in a search of the car pursuant to a search warrant.

Piatt, Torian, and Yancy were charged in a seven-count indictment. Count I of the indictment charged the three with conspiring to distribute approximately two hundred pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged Piatt with interstate travel for the purpose of promoting distribution of marijuana in violation of 18 U.S.C. § 1952. Count III charged Piatt with distribution of two hundred pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Torian was charged in Counts IV, V and VI, and Yancy was charged in Count VII. Torian pled guilty to two of the four counts against him and the other two counts were dismissed. At trial, the jury returned guilty verdicts against Piatt and Yancy on all counts with which they were charged. Piatt was sentenced to three years imprisonment on Count I and three years imprisonment on Count II; such sentences to be served concurrently. On Count III, he was sentenced to three years imprisonment with a three-year special parole term to run consecutively to the sentences imposed on Counts I and II.

I.

The jury was instructed for a period of approximately fifty-five minutes on the numerous counts involved in this case. After deliberating approximately an hour and twenty minutes, the jury indicated verdicts had been reached on three of the five matters before it, and, as it was 7:22 p. m., expressed a desire to go home for the evening. The district judge released the jurors until morning. The next morning, ten minutes after resuming deliberations, the foreman of the jury sent a note to the court requesting "the written instructions, all forty-one." Before it was answered, a second note requesting "the instructions regarding possession and conspiracy," and a third note requesting "the exact wording of Count Four [Count VII of the indictment] regarding Defendant Nathaniel Yancy" were sent to the court.

The district judge then conferred with all attorneys and announced his intention to read only those instructions requested by the jury. When the court called the jury into the courtroom, the foreman stated that verdicts had been reached on Count II and Count III of the indictment and as to one defendant on Count I. (Piatt was the only named defendant in Counts II and III.) The foreman stated that the jury was abandoning the first request for all of the instructions but desired responses to the second and third questions.

The district court then prepared the instructions for rereading and the jury was again called into the courtroom. The district judge cautioned the jury that he was reading only a portion of the instructions and that those instructions had to be considered in the context of all forty-one initial instructions and that all forty-one instructions had to be applied as a whole. He reminded the jury that the burden of proof was on the government and that the de-

fendants were entitled to a presumption of innocence. The district judge then reread twenty of the instructions, in groups as originally divided and identified, including those dealing with reasonable doubt and presumption of innocence, direct and circumstantial evidence, the definition of knowingly and willfully, the elements of conspiracy and of possession with intent to distribute, and a reminder that a separate crime or offense is charged in each count.

Piatt's counsel made no objection to the rereading or omission of any specific instruction but objected on the ground that all instructions should be read or none read.

The jury retired again and after four hours reached verdicts of guilty on all counts.

■ Piatt contends that it was improper to reread only twenty of the original forty-one instructions. We conclude that the district judge properly reread the portion of the instructions originally given, clearly cautioning that the instructions reread should be considered with all of the instructions earlier given. In doing so, the district judge followed the instruction of the United States Supreme Court that "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

■ This court has held that "it is settled that the request for additional instructions is a matter addressed to the sound discretion of the judge." *United States v. Gordon*, 455 F.2d 398, 402 (1972). When the jury makes specific requests for reinstruction on certain issues, the district court is justified in limiting its reinstruction to the issues requested. The trial court in *United States v. Castenada*, 555 F.2d 605, 611 (7th Cir. 1977), did not reread all of the original instructions and included new instructions in its rereading. The court of appeals found that a rereading of a portion of an original instruction upon request is permitted so long as it did not mislead or confuse the jury. The additional reinstructions

were held to have been properly given. In *United States v. Stover*, 565 F.2d 1010, 1014 (8th Cir. 1977), the trial court, in response to a jury question, reread its original instruction on defendant's failure to testify. The trial judge was held to have acted properly in reinstructing the jury by repeating the original instruction. *See also United States v. Jarboe*, 374 F.Supp. 310, 317 (W.D.Mo.1974), *aff'd* 513 F.2d 33, 36 (8th Cir. 1975).

In this case the district court reread twenty of the forty-one instructions but also cautioned that they were to be considered with the general instructions previously given. This procedure is consistent with that approved in *United States v. L'Hoste*, 609 F.2d 796, 809 (5th Cir. 1980).

Piatt's cited authorities do not support his position. The trial court in *Powell v. United States*, 347 F.2d 156, 157 (9th Cir. 1965), felt that the jury's question did not make sense and error was found in the court's failure to discover the nature of the jury's misunderstanding. In *United States v. Harris*, 388 F.2d 373, 377 (7th Cir. 1967), the trial court reread instructions on conspiracy but omitted all definitions of the terms, including "intent to defraud," and made no reference to the presumption of innocence or to the standard of proof required for conviction. In *United States v. Carter*, 491 F.2d 625, 632–33 (5th Cir. 1974), error was found primarily in "ad lib" remarks to the jury in which the court recited two illustrations, both of which pointed to the guilt of the accused.

These cases relied upon by Piatt do not justify this court in ruling that the district judge did other than meet its obligation of responding to the particular questions posed by the jury with sufficient reference to overall instructions to properly clear the jury's confusion. When the instructions were reread, the jury already had indicated that it had decided two of the counts charging only Piatt, and the instructions reread properly related to the counts on which the jury had not reached a verdict.

Piatt does not demonstrate that the jury was misled or confused, or that the district

court erred in rereading some but not all of the instructions.

In his brief, Piatt focuses on the failure to reread two cautionary instructions, No. 35 that the jury weigh with great care any out-of-court statement or act claimed to have been made or done by defendant, and No. 37 that the jury evaluate testimony offered by a witness testifying under a grant of immunity with great care, with the cognizance that the witness has a motive to falsify.

■ Piatt did not object specifically to the failure to reread these two instructions[2] and cannot claim error. Fed.R.Crim.P. 30; *United States v. Franklin*, 568 F.2d 1156 (8th Cir. 1978). Piatt does not demonstrate that there was plain error or that the charge as reread was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice.

## II.

■ Defendant contends that the district court erred in finding that there was sufficient independent evidence of a conspiracy to justify admission into evidence of out-of-court statements of a coconspirator, Torian. Sever, a witness called by the government, testified to certain statements made by Torian as well as his actions and movements, but defendant does not specify the hearsay statements to which he objects, why each statement should not have been admitted, and how in each instance he has been harmed thereby. This court in *United States v. Scanlon*, 640 F.2d 144, 147 (1981), ruled that such an argument should be rejected.

■ At trial, defendant objected to Sever's testimony concerning Torian's out-of-court statements. The district court admitted the testimony under the procedure outlined by this court in *United States v. Bell*, 573 F.2d 1040, 1044 (1978). See also Fed.R. Evid. 801(d)(2)(E). The court conditionally admitted the testimony and at the conclusion of the government's case made a find-

ing that there was a preponderance of independent evidence of a conspiracy and that the statements were admissible. We are unable to find that the district court erred in making this finding. The following independent evidence of conspiracy supports the district court's finding: Piatt's actions in obtaining the Grand Prix from West and driving to St. Louis; the bundle in the Grand Prix's back seat covered by a sheet when Piatt left Florida; telephone toll calls between Piatt's residence and that of Torian immediately before Piatt's departure from Florida; a telephone toll call from the Holliday Inn, Mount Vernon, Illinois, to Torian's residence billed to Piatt's home phone; Piatt's meeting with Torian and Sever in the Patio Bar witnessed by Joan Roberds; Piatt's admissions concerning the delivery of marijuana; the marijuana at Sever's house originally taken from the Grand Prix; and the marijuana found in the Grand Prix, including the marijuana partially covered by a sheet in the back seat.

Defendant relies upon *United States v. Frol*, 518 F.2d 1134, 1136–37 (8th Cir. 1975), in which the court held that there was nothing in the record to indicate a joint enterprise involving illicit drug traffic other than the conversations, and *United States v. Holder*, 560 F.2d 953, 956–58 (8th Cir. 1977), where the court held that there was no sufficient independent evidence of a conspiracy. The factual situations in *Frol* and *Holder* differ greatly from the substantial independent evidence of conspiracy present in this case.

■ Defendant also argues that testimony of West concerning statements made by Piatt were improperly admitted. Such statements of a defendant are not hearsay under Rule 801(d)(2)(A) of the Federal Rules of Evidence, which provides that a statement is not hearsay if "[t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity. . . ." *United States v. Smith*, 600 F.2d 149, 152 (8th Cir. 1979);

---

**2.** Piatt cites *United States v. Miller*, 546 F.2d 320, 324 (9th Cir. 1976), in which there was a specific objection to the omission of the credibility instruction.

United States v. Nelson, 603 F.2d 42, 45 n.3 (8th Cir. 1979). Admissibility of such statements is not dependent on proof of an ongoing conspiracy. *United States v. Smith,* *supra* at 152.

### III.

Defendant contends that the district court erred and abused its discretion in denying his motion for severance. In pretrial motions, defendant claimed that certain coconspirators would present exculpatory statements and would give such testimony only at a separate trial. No other record was made. This court has ruled that there must be independent support in the record for such an assertion. *United States v. Graham,* 548 F.2d 1302, 1311–12 (8th Cir. 1977).

. [7] Defendant has a heavy burden of demonstrating that the trial court abused its discretion. *United States v. Anthony,* 565 F.2d 533, 538 (8th Cir. 1977). Defendant primarily relies on *United States v. Seifert,* 648 F.2d 557 (8th Cir. 1980), and *United States v. Vigil,* 561 F.2d 1316 (9th Cir. 1977). In *Seifert* defendant's counsel made an offer of proof specifically outlining the expected testimony of the coconspirator, Ehrlich, that would exculpate defendant, and the offer of proof was supported by Ehrlich's affidavit. In *Vigil* an affidavit of defendant's counsel filed with the motion to sever specified that the coconspirator Vigil would exculpate Baca, and at trial, when told that Vigil would not testify, defendant's counsel sought to make an offer of proof as to Vigil's testimony. The offer was denied, defendant was forced to call Vigil to the stand, and Vigil refused to give testimony that would exculpate defendant and incriminate himself. The defendants in *Seifert* and *Vigil* presented a specific showing of evidence that would exculpate defendant. Defendant makes no such specific showing.

■ Defendant has shown no abuse of the trial court's discretion in its order denying severance.

### IV.

■ Defendant objects to the court's permitting the witness Roberds to testify, claiming that the government had not informed him that she would be a witness. The government had informed the court and defense counsel that Roberds had viewed a photo array. The rule in this circuit has been that the government is not required in noncapital cases to disclose names and addresses of its witnesses. *United States v. Little,* 562 F.2d 578, 581 (8th Cir. 1977). Defendant demonstrates no error in this respect.

Piatt's claims of error have been carefully considered, and found to be without merit, and the judgment is affirmed.