UNITED STATES of America, Appellee,

v.

Barry H. PARENT, Defendant, Appellant.

No. 91–1168.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1991.

Decided Jan. 21, 1992.

David Berman, Medford, Mass., with whom Ronald J. Chisholm, Jr. and Chisholm & Ganak, Boston, Mass., were on brief, for defendant, appellant.

Carolyn Stafford Stein, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and POLLAK,* Senior District Judge.

SELYA, Circuit Judge.

A federal court jury found defendant-appellant Barry H. Parent guilty of possessing firearms, he being a previously convicted felon. 18 U.S.C. § 922(g)(1) (1988). The district court imposed sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (1988). On appeal, Parent assigns error in three respects. He claims that the court below acted impermissibly in (1) circumscribing the cross-questioning of a prosecution witness, (2) instructing on the issue of constructive possession, and (3) mishandling a note from the jury. Finding the last point to be valid, we vacate the judgment and remand for a new trial.

### The Events

Because the lower court's treatment of the jury note comprises the dispositive issue on appeal, we abjure a rote recital of the evidence and proceed directly to the circumstances germane to that issue.

■ The testimony in Parent's trial concluded on December 4, 1990. The next day, following the lawyers' summations, the court delivered its charge *ore tenus*.[1] The jury retired to deliberate at 10:50 a.m. That afternoon, the deliberating jury sent the judge a note containing two questions.

One query need not concern us. The second asked the judge to "clarify the term constructive possession ... in all of its aspects."

After consulting with the attorneys, the judge returned the jury to the courtroom. He proceeded to reinstruct on constructive possession, first reemphasizing that the offense required scienter.[2] The defendant's objection to the supplementary instruction was overruled. The jury again retired. Deliberations continued. At 4:40 p.m., no verdict ascendant, court was adjourned.

On December 6, the jurors resumed consideration of the case. Shortly before noon, the judge received a note which, we are told, asked if the jurors could "visually review" the instruction on constructive possession.[3] The judge did not inform the lawyers of this communique, but instead took two sheets from the government's requests to charge and sent those sheets into the jury room. The sheets, attached as an appendix hereto, defined the term "constructive possession" and cited authority in support of the asserted definition. Approximately two hours later, presumably having lunched in the interim, the jury returned a guilty verdict. Only thereafter did the facts emerge as to the final jury note and the court's unilateral response to it.[4]

### The Error

■ It cannot be doubted that the district court's handling of the jury note was

* Of the Eastern District of Pennsylvania, sitting by designation.

1. A judge may, but need not, give the jury a written copy of the complete charge at the outset of deliberations. *See, e.g., Stineman v. Fontbonne College,* 664 F.2d 1082, 1087 (8th Cir. 1981); *United States v. Blane,* 375 F.2d 249, 255 (6th Cir.) (listing cases from other circuits), *cert. denied,* 389 U.S. 835, 88 S.Ct. 41, 19 L.Ed.2d 96 (1967); *see generally United States v. Previte,* 648 F.2d 73, 84 (1st Cir.1981). The judge elected not to do so here. That choice was well within the scope of his discretion.

2. Before reaching the meat of the inquiry, the court stated:

 I'm going to read to you again the legal definition of constructive possession, and preface it by saying of course possession must be knowing; that is, the defendant knew or was aware that he had a firearm within his possession or

control as previously defined. That comes with having the mental state of mind. He must know that he had it in his possession so juries don't convict people by accident or for any innocent reason; or "in the wrong place at the wrong time." That's the reason why we have the state of mind requirement.

3. We rely on what we are told because the note itself was not made part of the record and is nowhere to be found. The district court quoted from it, however, during the post-verdict colloquy, and counsel for both sides agree on the note's tenor.

4. The record is tenebrous as to exactly how the attorneys learned of the incident. In oral argument before us, both sides agreed that the judge did not call either the note or the court's response to counsels' attention until after jury had reached its verdict. We have assumed this to be the sequence of events.

in error. In *United States v. Maraj*, 947 F.2d 520 (1st Cir.1991)—an opinion which announced no innovative principle and which drew upon long-settled precedent— we stated that a jury note should customarily "be shown, or read fully, to counsel," with counsel thereafter being "given an opportunity to suggest an appropriate rejoinder." *Id.* at 525. We also indicated that, where the judge favors a written response to such a note, the lawyers should review the intended reply and "be afforded an opportunity to register objections before the reply is transmitted to the jury." *Id. Maraj*, then, stands foursquare for the proposition that messages from a deliberating jury, pertaining to ongoing deliberations, ought to be fully disclosed to the lawyers when received, so that the latter may be heard before the judge implements a course of action. *See id.; see also Shields v. United States*, 273 U.S. 583, 588, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927) ("Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.") (quoting *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919)); *cf.* Fed.R.Crim.P. 43(a) (defendant's presence required at every stage of trial). The court below—by responding to the jury's note before sharing it with counsel—violated the *Maraj* rule.

*The Harm*

 Determining that a bevue was committed does not complete the appellate task. A trial court's error in failing seasonably to inform counsel about a jury note does not require reversal if the error is benign. *See Maraj*, 947 F.2d at 526. Here, however, regardless of the standard under which the harmlessness inquiry is conducted,[5] the conviction must yield.

We begin our analysis by acknowledging that the giving, or withholding, of a supplemental instruction, or the contents of it if given, are matters committed to the trial court's sound discretion. *See United States v. Andrew*, 666 F.2d 915, 922 (5th Cir.1982); *United States v. Braverman*, 522 F.2d 218, 224 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975). When a question is posed by a deliberating jury, the trial court is often best advised to avoid gratuitous pererrations, "confin[ing] its response to the approximate boundaries of the jury's inquiry." *United States v. Ladd*, 885 F.2d 954, 961 (1st Cir.1989). In ordinary circumstances, then, a trial court, confronted with a specific query, may appropriately limit its response to the particular question posed. *See, e.g., id.; United States v. Piatt*, 679 F.2d 1228, 1231 (8th Cir.1982); *United States v. Chatham*, 568 F.2d 445, 451 n. 10 (5th Cir.1978); *Whiting v. United States*, 321 F.2d 72, 75 & n. 3 (1st Cir.), *cert. denied*, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963).

In this instance, the court's proffer responded directly to the inquiry presented, stated the law with reasonable fidelity, and

---

5. There are two yardsticks for measuring harmless error in a criminal case. The stricter standard, required for many constitutional deprivations, necessitates that the government prove, beyond a reasonable doubt, that the error did not influence the verdict. *See, e.g., Chapman v. California* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); *United States v. Argentine*, 814 F.2d 783, 789 (1st Cir.1987). The less stringent standard, applicable to most trial errors, permits a conviction to remain intact, error notwithstanding, so long as it can be said "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *see also, e.g., United States v. Ladd*, 885 F.2d 954, 957–58 (1st Cir. 1989). It is questionable which standard applies when, as here, the trial court fails seasonably to disclose, and acts unilaterally upon, a message from a deliberating jury. *See Maraj*, 947 F.2d at 526 (noting that "our own cases appear to have left open the question"). But, since the error under review was potentially harmful, howsoever measured, we follow *Maraj*'s lead and leave the open question unanswered.

contained nothing new.[6] Under ordinary circumstances, the reply might well prove unexceptionable. Here, however, the circumstances were far from ordinary. One salient circumstance, of course, is that the critical exchange between judge and jury took place without the parties' knowledge. The Court has made clear that, in such a situation, the real harm is not that the trial judge might have misstated the law—that sort of error, after all, could be meaningfully evaluated after the fact—but that the aggrieved party will have lost the value of the chance: the opportunity to convince the judge that some other or different response would be more appropriate, the circumstances considered. *See Fillippon*, 250 U.S. at 82, 39 S.Ct. at 436 (describing such an error as "presumptively injurious"). This case is a paradigmatic example of the point; it is entirely plausible that defense counsel, if seasonably apprised, might successfully have prevailed upon the district court to withhold the written version, or to couple the supplemental instruction with, say, an instruction on guilty knowledge,[7] or at least to remind the jury of its obligation to heed the charge as a whole. Being kept in the dark, defense counsel was powerless to prime the pump of persuasion.

To be sure, the presumption of injury can sometimes be rebutted. But on the facts of this case, the error looms particularly large and, hence, the likelihood of harm is correspondingly difficult to rebut. For one thing, there is some reason to believe that defense counsel's timely intervention might have been productive. For another thing, human experience teaches that people frequently give special credence to the written word. *Cf., e.g.*, Job 19:23 ("Oh that my words were now written!"). Thus, when a

judge who has charged jurors orally elects thereafter to give them a fragment of the charge in written form, the danger of overemphasis is acute. It is all too easy for jurors to dwell upon a few sentences, in black and white, at the expense of straining to recall what else the judge may have said. The Third Circuit put it well:

> Giving supplemental instructions to the jury is usually a delicate and sensitive task requiring the exercise of judgment and skill. The task [is] more delicate when the principal charge is oral and the supplemental instructions are in writing because of the risk of accentuating a segment of the charge by reducing it to writing.

*Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 28 (3d Cir.1981). In this case, moreover, the uncertain effect of the supplemental instruction was compounded by the list of citations gracing the second page. *See* Appendix, *infra*, p. 28. No explanation was offered as to the meaning of these citations. It is fair to assume, at the very least, that including the list created a fertile source of possible confusion for lay jurors.

It is also noteworthy that, in addition to being out of balance, the supplemental instruction, as is so often true, was delivered at a critical juncture in the case. Indeed, the relatively brief interval between delivery of the instruction and rendition of a verdict is some indication of the importance of the court's response. What is more, the instruction went directly to the heart of Parent's case. He argued below, as on appeal, both that (1) the evidence did not support a finding of constructive possession, and (2) in any event, the court's lan-

---

**6.** We have compared the written sheets submitted to the jury with the court's original instructions on constructive possession and the court's earlier supplemental instructions on the same topic (delivered from the bench on the afternoon of December 5). There are variations in wording and nuance among the three versions. Nonetheless, the substance of the constructive possession charge was consistent throughout.

**7.** We think it is significant that, when the jury first inquired about constructive possession, the district court, after consulting with counsel,

reinstructed in some detail on *both* constructive possession and scienter, *see supra* note 2 and accompanying text, thereby focusing the jury's attention on the linchpin of Parent's defense. The second time around, however, the lawyers were not consulted and the strong linkage between constructive possession and scienter was foregone. Unlike Judge Coffin, *see post*, we do not think that the mere mention of the word "knowingly" in the written supplement was an adequate proxy for the fuller explication of the scienter requirement.

guage improperly skewed the legal standard for constructive possession. In short, the defendant lost the opportunity to argue, at a time and place when arguing might have been meaningful, not about some peripheral matter, but about the crux of his defense.

We neither hold nor suggest that it is *per se* error for a judge, having charged orally, to honor a jury's request for a written supplemental instruction. *See, e.g., United States v. Ehrlich*, 902 F.2d 327, 330 (5th Cir.1990) (no reversible error where trial court, in answer to specific request and after consultation with counsel, gave the jury a written supplemental instruction summarizing the elements of the offense; under the totality of the circumstances, the "supplemental instruction created [no] prejudicial imbalance"), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991); *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1315 (5th Cir.1977) (similar), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). Nonetheless, we are strongly of the view that, if a fractional written supplement is to be used following the entirety of an oral charge, the judge must be extremely careful to avoid the possibility of prejudicial emphasis. The manner in which this prophylaxis can most satisfactorily be accomplished will vary from case to case. One way of protecting the parties' rights is "by carefully reminding the jury of other aspects of the original charge and cautioning them that the segment of the charge which is amplified or explained should be considered in the light of the other instructions and is not to be given undue weight." *Beardshall*, 664 F.2d at 29. Another way is by balancing the contents of the supplemental instruction to dilute any undue suggestiveness or coercive effect. *Cf. United States v. Nichols*, 820 F.2d 508, 512 (1st Cir.1987) (offering guidelines for balancing modified *Allen* charge); *United States v. Angiulo*, 485 F.2d 37, 39 (1st Cir.1973) (same). A third possibility is to reduce the entire charge to writing. We make no effort to catalog all the acceptable variations on the theme. It suffices to remark that, in the case at hand, no safeguards were employed. As a result, the factors which we have mentioned, in combination, coalesced to produce an unacceptable risk of prejudice.

### The End

We need go no further.[8] Because the court below erred in giving the jury a supplemental instruction without seasonably informing counsel about the matter, and because we cannot say with confidence, on the record as a whole, that the error was harmless, we must sustain the defendant's appeal.

*The judgment of conviction is vacated and the case is remanded to the district court for a new trial.*

COFFIN, Senior Circuit Judge (*dubitante*).

I write briefly to express my disagreement with the court over whether the district court's handling of the written instruction was harmless error. While inclined to agree that the court's failure to notify counsel of the jury's request produced error, for the reasons set forth in *United States v. Maraj*, 947 F.2d 520, 525–26 (1st Cir.1991), I am unable to see the harm, under either of the applicable constitutional tests, *see supra*, note 5.

The written charge submitted to the jury was, in my view, a faithful reproduction of its earlier oral charge. The oral instruction, given upon the advice of counsel for both the defendant and the government, included the elements of constructive possession and scienter. The written version, likewise, contained both an explanation of constructive possession and an instruction on guilty knowledge. The treatment of constructive possession begins with the following language, which in my view, could

---

**8.** In view of our disposition of this matter, we eschew expository comment about the remaining assignments of error. We believe, however, that on the record presented below, the judge acted within the realm of his discretion in imposing certain limitations on the cross-examination of John Cook, a prosecution witness. We also believe that, contrary to Parent's contention, the evidence was sufficient to warrant a charge on constructive possession.

not be more clear as to the requirement of "guilty knowledge": "A person who, although not in actual possession, knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it," *see* Appendix, *infra,* p. 28. Where, as here, a written instruction is consistent with an earlier oral charge that was drafted with defense counsel's assistance, I fail to see the harm in the district court's not having informed counsel of the later request.[9]

That the later charge was written, rather than oral, and that the jury returned its verdict relatively swiftly upon receiving the written charge, suggest harmlessness as readily as they do harm. While the oral instruction certainly emphasized the scienter element more than the written version, there was no need—precisely because of the power of the written word—for such emphasis in the reduced instruction. Similarly, the speed with which the jury reached its decision suggests that the written charge served precisely the purpose anticipated by the jury when it requested the writing, namely, that it clarified a difficult issue which had, until then, stalled the jury's deliberations.

I, therefore, would find the error in this case harmless.

### *APPENDIX*

### INSTRUCTION NO. 13

The second element which the government must prove is knowing possession of a firearm by the defendant. The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly had direct physical control over a thing at a given time is then in actual possession of it.

A person who, although not in actual possession, knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

In other words, to "possess" means to have something within your control. It does not necessarily mean that you must hold it physically, that is, have actual possession of it. As long as the firearm is within your control, you possess it.

The defendant's possession need not be sole possession. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

If you find beyond a reasonable doubt that the defendant, either alone or jointly with others, had actual or constructive possession of one or more of the firearms described in the indictment, then you may find that the government has proved possession.

Proof of ownership is not required.

Possession may be found even if the firearm or firearms were possessed only for a moment.

Sand, *Modern Federal Jury Instructions,* No. 35–54;

*United States v. Freed,* 401 U.S. 601 (1971);

*United States v. Lamare,* 711 F.2d 3, 5 (1st Cir.1983);

*United States v. Alverson,* 666 F.2d 341 (9th Cir.1982);

*United States v. McCoy,* 781 F.2d 168, 171 (10th Cir.1985).

---

**9.** The handful of citations to legal authority at the end of the written instruction does not per- suade me otherwise.