AMICA MUTUAL INSURANCE
COMPANY

v.

George TASHJIAN, Jr.

No. 96–349–Appeal.

Supreme Court of Rhode Island.

Nov. 24, 1997.

Thomas R. Bender, Daniel P. McKiernan, Providence, for Plaintiff.

Richard A. Ciccone, Edward J. Romano, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before the Court for oral argument on September 16, 1997, pursuant to an order directing the defendant, George Tashjian, Jr., to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing oral argument and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues should be summarily decided.

On April 3, 1993, George Tashjian, Jr. (George), while a pedestrian in the process of attempting to cross Warwick Avenue, a public highway in the city of Warwick, was struck by a motor vehicle operated by an uninsured motorist and was severely injured. Sometime thereafter, George filed a claim with Amica Mutual Insurance Company (Amica) for uninsured-motorist benefits under a liability policy issued by Amica to his mother, Barbara Ann Tashjian (Barbara). Part C of that policy provided that Amica would pay compensatory damages that an *insured* would be legally entitled to recover from the owner or the operator of an unin-

sured motor vehicle as a result of bodily injury. The policy defined an "insured" as "you or any *family member*." The policy further defined "family member" as "a person related to you by blood, marriage or adoption, who is a resident of your household."

On April 3, 1993, Barbara resided with her husband at 17 Burnett Street in the town of Johnston and had resided there for some thirty years. Although George had several years earlier left Barbara's residence at that address when he married, that marriage ended in a divorce,[1] and George claims that he then returned to live with his parents at the Burnett Street address in February 1993 and was a family-member resident there on April 3, 1993, the date he was struck and injured by the uninsured motorist. Amica challenged George's residency assertion by claiming that his residence was in fact located at Arbor Hill Apartments at 363 Simmonsville Avenue in the town of Johnston. In order to resolve the residency question and George's claim, Amica, on February 11, 1994, filed a complaint for declaratory judgment in the Providence County Superior Court. In that complaint, Amica requested the Superior Court to declare that on April 3, 1993, George was not a resident of Barbara's household and that he was not entitled to make claim against Amica for damages under the automobile policy it had issued to her.

Following a jury trial, a Superior Court jury on January 5, 1996, returned a verdict, stating on the jury-verdict return form, "We the Jury find for the Plaintiff Amica Insurance Company." After the later denial of his motion for a new trial on February 2, 1996, George duly filed his claim of appeal to this Court. In that appeal, he alleged as error the refusal of the trial justice to give the requested jury instructions as well as the trial justice's instructions to the jury. He also alleged that the trial justice erred not only in refusing to honor a jury request to have testimony by George read back to the jury but also in the manner in which the trial justice responded to the jury's request.

Our review of the trial justice's instructions to the jury, viewed in its entirety, leads us to conclude that even though it was perhaps not given as George would have preferred, the trial justice's instructions adequately addressed the trial issues, and George's claims of error therein are without merit. *Montecalvo v. Mandarelli,* 682 A.2d 918, 922 (R.I.1996); *Hueston v. Narragansett Tennis Club, Inc.,* 502 A.2d 827, 829 (R.I. 1986).

We next address George's assertion that the trial justice erred in the manner in which he responded to the trial jury's request to have a portion of the trial testimony read back with specific reference to what the jury apparently believed George's testimony to have been regarding how long he intended to remain with his parents at 17 Burnett Street after returning to live with them.

The trial record discloses that upon completion of the trial justice's instructions to the jury and after counsel had noted their objections to his charge, the trial justice informed the jury that he had earlier provided for their lunches to have been ordered and delivered to the jury room and that they could retire to have lunch and to commence their deliberations. At the same time, because of the late noon hour, the trial justice excused trial counsel and requested that they return "around 1:30." The trial justice remained in his courtroom, however, to take up other matters unrelated to the case upon which the jury was then in deliberation. Upon completion of those other matters, the trial justice excused his court stenographer for lunch. A short time later, at 1:17 p.m., the sheriff assigned to the jury delivered a written request from the jury to the trial justice. It stated:

> "May we have the transcript during which the defendant stated that he was going to his mother's home in order to get back on his feet. This was after he left the 36 Pleasant Avenue residence. Tuesday's 2 Jan. 96—testimony."

1. While married, George and his wife lived at 36 Pleasant Avenue, a short distance from his mother's house.

What next transpired presents a most unusual scenario, from which events George alleges error on the part of the trial justice.

The trial justice, after receiving the jury's request, and without notice to, or in the presence of counsel, proceeded to respond to the jury's request. The trial justice, writing on the same paper that contained the jury's request, informed them:

"Mr. Foreman:

There is no transcript of the defendant's testimony. At Best we would be hard pressed to have Mrs. Doyle's notes read by my present court reporter.

[signature of trial justice]

1:17 p.m.—5 Jan. 96"

■ That action by the trial justice in the context of these case facts constituted clear error. In the absence of overriding considerations, a trial justice may not meet or communicate with a trial jury without the presence of a court stenographer after the jury has commenced its deliberations. *Macchia v. Ducharme*, 44 R.I. 418, 117 A. 651 (1922), and without affording counsel the opportunity to be present. This court has mandated strict compliance with that cardinal rule in criminal as well as civil cases. Super.R.Crim.P. 43; *Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227, 1233–34 (R.I.1996); *State v. Sciarra*, 448 A.2d 1215, 1220 (R.I.1982).[2] Adherence to that rule was most necessary in this case because the jurors' request to have certain testimony read back to them indicates that one or more of them mistakenly believed that George had testified regarding the specific subject matter identified in the note to the trial justice. Certainly, what George had said, if, as the jury believed, he had in fact said it, concerned his state of mind with regard to his intention when he returned in February 1993 to live at his mother's home. The trial record clearly discloses, however, that George never testified as the jury's note indicated it believed he had.

What in retrospect is also troublesome in this case is that had the trial justice notified trial counsel of the jury's request, counsel could have assisted him in making a reasonable response to that request. Counsel could have suggested that the trial justice first inquire of his court stenographer whether she was able to read the trial stenographer's notes, prior to informing the jury that "there is no transcript of the defendant's testimony." Had that been done, the trial justice would have learned that she was able to read those notes. The trial justice also would have learned from her reading of those notes that George had never testified as the jurors' note indicated they believed he had, and the trial justice could have corrected the jury's apparent mistaken recollection. "Being kept in the dark, defense counsel was powerless to prime the pump of persuasion"[3] and assist the trial justice.

Our rule barring all communication between the trial judge and the jury after the submission of the case to the jury, except in open court, with a court stenographer present[4] and in the presence of, or after due notice to, the parties or their counsel is intended not only to protect the rights of the parties but also to assist both the court and the jury in achieving a fair determination of

---

2. Amica's reliance upon *Newport Fisherman's Supply Co. v. Derecktor*, 569 A.2d 1051 (R.I. 1990), is misplaced. In that case, the trial jury had been *discharged* after returning its verdict but then immediately informed the trial justice that it had erred and had "screwed it up" and had intended to award a greater amount. The trial justice then immediately, in the presence of counsel, "placed what had happened on the record," and defense counsel was permitted to place his objection on the record. Eight days later, the trial justice, in the presence of counsel and with a court reporter recording the proceedings, reassembled the jurors and, after they were sworn, questioned them concerning the erroneous computation of their award.

3. Circuit Judge Selya, writing in *United States v. Parent*, 954 F.2d 23, 26 (1st Cir.1992).

4. The presence of the court stenographer recording ex parte communications between the judge and the jury will not in itself satisfy our rule. A transcript cannot reveal a judge's facial expression or tone of voice. Counsel must be afforded notice and the right to be present in order to observe the judge's demeanor and note objections, if any, to the judge's actions. *State v. McMahon*, 186 Wis.2d 68, 519 N.W.2d 621, 629 (App.1994).

the trial issues and in maintaining the appropriate atmosphere of dignity and fairness. It is a rule that finds early recognition by the United States Supreme Court in *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919). That Court stated:

"We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the court room, where counsel are entitled to anticipate, and bound to presume, in the absence of notice to the contrary, that all proceedings in the trial will be had. In this case the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction." *Id.* at 81, 39 S.Ct. at 436, 63 L.Ed. at 855–56. *See also United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).[5]

■■■ Federal First Circuit opinions reflect continued application and adherence to the rule set out in *Fillippon. See, e.g., United States v. Parent*, 954 F.2d 23 (1st Cir. 1992); *Voutour v. Vitale*, 761 F.2d 812 (1st Cir.1985). In *Parent* Circuit Judge Selya aptly and uniquely noted, in reviewing earlier precedent:

"In *United States v. Maraj*, 947 F.2d 520 (1st Cir.1991)—an opinion which announced no innovative principle and which drew upon long-settled precedent—we stated that a jury note should customarily 'be shown, or read fully, to counsel,' with counsel thereafter being 'given an opportunity to suggest an appropriate rejoinder.' *Id.* at 525. We also indicated that, where the judge favors a written response to such a note, the lawyers should review the intended reply and 'be afforded an opportunity to register objections before the reply is transmitted to the jury.' *Id. Maraj*, then, stands foursquare for the proposition that messages from a deliberating jury, pertaining to ongoing deliberations, ought to be fully disclosed to the lawyers when received, so that the latter may be heard before the judge implements a course of action. *See id.; see also Shields v. United States*, 273 U.S. 583, 588, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927) ('Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.') (quoting *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919))." 954 F.2d at 25.

Having concluded error on the part of the trial justice, we must nonetheless consider whether two of our Rules of Civil Procedure, which in ordinary circumstances would mandate our refusal to consider George's claim for relief, should be applied in this particular case setting. Rule 46 of the Superior Court Rules of Civil Procedure requires that in order for a party to raise an issue of error on appeal to this Court, he or she must have first made objection to the complained-of error in the ruling or order of the trial judge at the time the ruling or the order was made or entered. We have consistently adhered to the rule that claims of error not raised below may not surface here in this Court for the first time on appeal except in particular and exigent circumstances. Joseph R. Weisber-

---

5. The rule appears to have been first applied in a federal criminal case in *Shields v. United States*, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927).

*See also Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

ger, *Rhode Island Appellate Practice* at 89 (1993). On the particular facts before us, we conclude that George's counsel was not able to comply with Rule 46 because he was not present when the complained-of action by the trial justice took place. The record reveals that when counsel first learned of the trial justice's written communication to the trial jury, he had at that time no reasonable opportunity to voice an objection because the complained of communication with the jury had already occurred, and moreover, after informing counsel of what had transpired, immediately ordered the courtroom clerk to take the jury's verdict. Rule 46 on the particular facts before us also appears to preserve the defendant's right to challenge the trial court's error now. That rule provides that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party." We are satisfied here that the absence in the record of the objection required by Rule 46 is not now fatal to George's right to challenge the trial justice's action here on appeal.

The second and more perplexing rule-compliance omission, however, concerns counsel's failure to raise the trial justice's alleged error in George's motion for a new trial. Rule 59 of the Superior Court Rules of Civil Procedure as amended September 5, 1995, permits alleged errors of law committed by the trial justice in a case tried before a jury to be raised in a motion for new trial. Had that option been exercised in this case, the trial justice would have been afforded the opportunity to first address the error of the law that the defendant now raises here before us and then to have granted the defendant a new trial had he been satisfied that error had been committed.[6]

 Ordinarily this Court declines consideration of issues raised for the first time in

this court. However, in this instance only because of the unique factual background present in this case, and not without some reluctance on our part, we will relieve defense counsel of the consequences of his failure to comply with rule 59. We do so only because we are concerned here with a Rule amendment that only some four months before the trial in this case effected a change in our long-standing practice and law with regard to motions for new trial in jury-tried cases and we assume, quite beneficently, that some members of the bar by January 1996 had not yet fully acquainted themselves with the September 5, 1995 rule amendment. Henceforth, however, as we partially noted in *Tillson v. Feingold,* 490 A.2d 64, 67 (R.I. 1985), "[w]e do caution members of the bar that in the future the filing of a motion for new trial" must conform to the amended Rule 59. Errors of law not first presented to the trial justice in a jury tried case in a motion for new trial will not be permitted to be later raised in this Court for the first time on appeal.

Because we deem the trial judge's action in this case in responding to the trial jury's request without the presence of a court stenographer and without notice to and opportunity for counsel to be present to be clear error, we sustain the appeal, vacate the judgment appealed from and remand the case to the Superior Court for a new trial.

The papers in this case are remanded to the Superior Court for further proceedings in accordance with this opinion.

---

6. We note that in a nonjury trial, the amended Rule 59 of the Superior Court Rules of Civil Procedure persists in not permitting alleged errors of law to be considered by a trial justice in a motion for new trial. In nonjury cases, Rule 59 retains our long-established rule and practice as set out in *Colvin v. Goldenberg,* 108 R.I. 198, 273 A.2d 663 (1971). *See also Tillson v. Feingold,* 490 A.2d 64 (R.I.1985).