USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 _________________________

No. 97-2079

 LOUIS R. TESTA,
 Plaintiff, Appellee,

 v.

 WAL-MART STORES, INC.,
 Defendant, Appellant.

 _________________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Shane Devine, Senior U.S. District Judge]

 _________________________

 Before

 Torruella, Chief Judge,

 Selya and Lynch, Circuit Judges.

 _________________________

 George R. Moore, with whom Bret D. Gifford and Devine,
Millimet & Branch, P.A. were on brief, for appellant.
 Stewart S. Richmond, Jr., with whom Scott H. Harris and
McLane, Graf, Raulerson & Middleton, P.A. were on brief, for
appellees.

 _________________________

 May 21, 1998

 _________________________ SELYA, Circuit Judge. Defendant-appellant Wal-Mart
Stores, Inc. (Wal-Mart) insists that the jury verdict in this
piscine personal injury case results from instructional error. 
After careful perlustration of the record, we conclude that Wal-
Mart is fishing in an empty stream.
I. BACKGROUND
 Plaintiff-appellee Louis R. Testa worked as a truck
driver for Heavenly Fish, a wholesaler of tropical fish. On
February 2, 1993, Testa arrived at a brand new Wal-Mart retail
outlet in Hinsdale, New Hampshire, with merchandise in tow. He
parked his van on the delivery ramp behind the store and alerted
Wal-Mart to his arrival. A Wal-Mart employee helped Testa unload
his ichthyic cargo. In the process, Testa slipped on the snow-and-
ice-coated ramp, fell, and injured himself.
 Wal-Mart photographed the ramp that day and proceeded to
conduct a full investigation of the incident. Before the month was
out, a Wal-Mart employee prepared an internal report noting, interalia, that Testa had threatened to sue.
 On April 24, 1995, Testa made good on his word. Invoking
diversity jurisdiction, see 28 U.S.C. 1332(a), Testa sued Wal-
Mart in New Hampshire's federal district court. Wal-Mart denied
that it had committed any actionable negligence. It pointed out
that the mishap occurred on the day of the Hinsdale store's grand
opening and, anticipating a huge turnout, it wanted the staff's
attention focused exclusively on customer service. To that end, it
asserted that Rachelle Manning, an invoice clerk, informed all
vendors on February 1 that Wal-Mart would not accept deliveries the
following day. Thus, Wal-Mart explained, it did not bother to
clear the ramp on February 2 because it believed that no deliveries
would be forthcoming. In addition to this defense, Wal-Mart also
suggested that Testa had assumed the risk of using the icy ramp and
that his negligence caused (or at least contributed to) the
occurrence of the accident.
 The trial itself was brief but jury deliberations were
protracted. Eventually, the jury returned a verdict for the
plaintiff in the sum of $55,112. This appeal ensued.
II. THE JURY'S QUESTION
 After nearly five hours of deliberation, the jury sent a
note to the judge which read in pertinent part: "Your Honor, can
we please have a review of the law 'negligence', and [its] relation
to proximate cause?" The judge consulted with counsel and
responded to this query by re-reading his original charge on
negligence and proximate cause. The judge asked the jury if the
supplemental instruction satisfied their request and the foreperson
responded affirmatively.
 The error that Wal-Mart perceives is less with what the
judge said than with what he did not say. Over Wal-Mart's
objection, Judge Devine declined to re-read his charge on
comparative negligence as part and parcel of the supplemental
instruction. In this vein, the judge noted that "you don't get to
comparative negligence until or unless [the jurors] establish that
there is negligence existing on the part of the defendant, and
their question specifically asks for negligence and proximate
cause." Based on this scenario, Wal-Mart maintains that the trial
court erred by refusing to include language anent comparative
negligence in the supplemental instruction.
 We ordinarily review jury instructions to discern whether
they adequately illuminate the law applicable to the controverted
issues in the case without unduly complicating matters or
misleading the jury. See Levinsky's, Inc. v. Wal-Mart Stores,
Inc., 127 F.3d 122, 135 (1st Cir. 1997). In that process, we
examine the instructions as a whole rather than taking each
fragment in isolation. See United States v. DeStefano, 59 F.3d 1,
3 (1st Cir. 1995). Withal, a jury instruction given after
deliberations have begun comes at a particularly delicate juncture
and therefore evokes heightened scrutiny. See Bollenbach v. United
States, 326 U.S. 607, 612 (1946); Tart v. McGann, 697 F.2d 75, 77
(2d Cir. 1982).
 Careful craftsmanship of a supplemental jury instruction
requires the district court to walk a fine line the court can err
as easily by overinclusiveness as by underinclusiveness. See Tatrov. Kervin, 41 F.3d 9, 15 (1st Cir. 1994) (warning that "extra
language" may erroneously mislead a jury); United States v. Parent,
954 F.2d 23, 25 (1st Cir. 1992) (cautioning against "gratuitous
pererrations" in the course of supplemental jury instructions). 
Understandably concerned about this phenomenon, Judge Devine gave
the jury accurate legal standards concerning the precise area of
their inquiry negligence and proximate cause and eschewed a
broader compass. He thus avoided the possible confusion that might
have been engendered had he volunteered an instruction that the
jury had not requested.
 Wal-Mart contends that, even if the district court's
supplemental instruction adequately responded to the letter of the
jury's inquiry, it did not capture the spirit. In Wal-Mart's view,
all negligence concepts are linked, more so in this case. Thus,
the jury's query necessarily implied a curiosity about comparative
negligence and suggested that the court, to be fair, should give an
additional instruction that the jury lacked the sophistication to
ask for specifically. We reject this conjectural construct. It
amounts to nothing more than rank speculation and we are
unwilling to overturn a jury verdict on the basis of sheer surmise.
 Here, moreover, the surrounding circumstances suggest
that Wal-Mart's speculation likely is unfounded. For one thing, as
Judge Devine remarked, comparative negligence is an affirmative
defense under New Hampshire law, see Brann v. Exeter Clinic, Inc.,
498 A.2d 334, 336-337 (N.H. 1985), and a jury logically would not
be expected to reach that issue until it first had resolved the
question of negligence. For another thing, after Judge Devine gave
the supplemental instruction, the jury foreperson responded that
the panel's question had been fully answered. Although this
response, in itself, is not conclusive as the appellant
ruminates, the forelady might have spoken only for herself or might
have grown bashful in an unaccustomed spotlight it is at least
some evidence that the jury received exactly what had been
requested.
 We will not paint the lily. The usual rule, to which we
subscribe, is that when a jury question is received during
deliberations, the judge must address only those matters fairly
encompassed within the question. See Parent, 954 F.2d at 25;
Stathos v. Bowden, 728 F.2d 15, 19 (1st Cir. 1984); Jury v. R & G
Sloane Mfg. Co., 666 F.2d 1348, 1352-53 (10th Cir. 1981); see alsoUnited States v. Ladd, 885 F.2d 954, 961 (1st Cir. 1989) (stating
that a judge, in answering a question posed by a deliberating jury,
normally should "confine his response to the approximate boundaries
of the jury's inquiry"). It is a corollary of this rule that the
trial judge has discretion to embellish his answer as he reasonably
may deem advisable. See United States v. Bayer, 331 U.S. 532, 536
(1947) (explaining that "once the judge has made an accurate and
correct charge [in response to a jury's question], the extent of
[any] amplification must rest largely on his discretion"); see alsoElliott v. S.D. Warren Co., 134 F.3d 1, 6 (1st Cir. 1998) (stating
that "within wide limits, the method and manner in which the judge
carries out this obligation [to inform the jury about the
applicable law] is left to his or her discretion"). The operative
word, however, is "discretion". We do not doubt that Judge Devine
could have repeated his comparative negligence instruction as a
part of his answer to the jury's question if he believed that doing
so would help the jury to understand the concepts of negligence and
proximate cause. But we see nothing in the circumstances of this
case that compelled the judge to add such an embellishment or that
otherwise required a deviation from the customary praxis. 
Consequently, the appellant's first assignment of error fails.
III. DESTRUCTION OF BUSINESS RECORDS
 Wal-Mart contends that the trial court committed a second
instructional error. Manning testified that she had put a hold on
the order previously placed with Heavenly Fish on February 1, 1993,
thus bolstering Wal-Mart's claim that it had no reason to clear the
delivery ramp on February 2. At trial, however, Wal-Mart was
unable to produce either the purchase order addressed to Heavenly
Fish or the telephone records for February 1 (the date when Manning
claims to have called). According to Wal-Mart, Manning discarded
these records in or around February 1995 (a few months before Testa
brought suit), pursuant to a standard record-retention policy. 
Manning stated that she did not know about the accident at the time
and no one instructed her to preserve either the purchase order or
the telephone records.
 Despite Wal-Mart's protest that it acted in good faith
and without notice of the destroyed records' relevance, the
district court instructed the jury that:
 A reasonable inference is a deduction which
 common sense and reason lead you to draw from
 the evidence. An example is one inference
 that the plaintiff seeks to have you draw here
 is to the effect that the defendant, having
 known that a lawsuit was pending, destroyed
 certain records and did so because defendant
 knew the records to be harmful to its own
 case. But the law holds that such an
 inference can be drawn only if the plaintiff
 proves by a preponderance of the evidence that
 [the defendant] not only knew of the potential
 claim of the plaintiff, but also knew of the
 potential relevance of the destroyed
 documents. And even where plaintiff satisfies
 this burden of proof, any inference that may
 be drawn is permissive and not mandatory. 
 That is, such inference may or may not be
 drawn by the jury.

The appellant challenges the propriety of this instruction insofar
as it allowed the jury to draw a permissive negative inference from
the unavailability of the purchase order and the telephone records.
 We have held with some regularity that a trier of fact
may (but need not) infer from a party's obliteration of a document
relevant to a litigated issue that the contents of the document
were unfavorable to that party. See, e.g., Blinzler v. Marriott
Int'l, Inc., 81 F.3d 1148, 1158 (1st Cir. 1996); Anderson v.
Cryovac, Inc., 862 F.2d 910, 925 (1st Cir. 1988); Nation-Wide Check
Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214, 217-18 (1st
Cir. 1982). This permissive negative inference springs from the
commonsense notion that a party who destroys a document (or permits
it to be destroyed) when facing litigation, knowing the document's
relevancy to issues in the case, may well do so out of a sense that
the document's contents hurt his position. See Beil v. Lakewood
Eng'g & Mfg. Co., 15 F.3d 546, 552 (6th Cir. 1994). Consistent
with this rationale, a suitable foundation must exist before such
an inference can materialize. Thus, the sponsor of the inference
must proffer evidence sufficient to permit the trier to find that
the target knew of (a) the claim (that is, the litigation or the
potential for litigation), and (b) the document's potential
relevance to that claim. See Blinzler, 81 F.3d at 1159. 
Moreover, even if these foundational requirements have been met,
the trier nonetheless may refuse to draw the negative inference. 
In other words, the inference is permissive, not mandatory. Seeid.
 Wal-Mart acknowledges this doctrine, but labors to
convince us that Testa failed to lay an adequate foundation in this
instance. We are not persuaded.
 We think it is obvious that a rational jury could
conclude that Wal-Mart was on notice of Testa's claim. The
accident occurred on February 2, 1993. Wal-Mart investigated
immediately and, as early as February 18, 1993, Wal-Mart completed
an internal accident report in which it acknowledged Testa's
inclination to sue. There is nothing in the record that would have
dispelled this premonition.
 By like token, a rational jury also could conclude that
Wal-Mart was on notice of the records' relevance. After all, Wal-
Mart's defense from the start was anchored on the premise that it
had no reason to anticipate any deliveries on the day in question. 
Surely, then, a reasonable factfinder could view Wal-Mart's placing
of a purchase order for delivery on February 2 to be antagonistic
to this defense. The telephone records showing whether Manning in
fact called Heavenly Fish to abrogate the purchase order (and if
so, when) also would bear on this line of defense. Accordingly,
a jury could find that Wal-Mart had ample notice of both the claim
and the relevance of the records.
 Wal-Mart offers two rejoinders. First, it points to
evidence showing that it destroyed the documents not for a
nefarious purpose, but only in compliance with a corporate record-
retention policy. We readily agree that evidence that documents
were destroyed in the ordinary course of business, pursuant to
routine practice, is material to the inquiry, but the mere
introduction of such evidence neither removes the question from the
jury's ken nor precludes the jury from drawing a negative
inference. See Nation-Wide Check, 692 F.2d at 219.
 Second, Wal-Mart notes that there is no proof that
Manning (the Wal-Mart employee who actually discarded the records)
knew of either the claim or the records' relevance to it. This is
true as far as it goes but it does not go very far. Whether the
particular person who spoils evidence has notice of the
relationship between that evidence and the underlying claim is
relevant to the factfinder's inquiry, but it does not necessarily
dictate the resolution of that inquiry. The critical part of the
foundation that must be laid depends, rather, on institutional
notice the aggregate knowledge possessed by a party and its
agents, servants, and employees. See Blinzler, 81 F.3d at 1158-59;
Nation-Wide Check, 692 F.2d at 217-18. Here, the preconditions for
jury submission of the permissive negative inference were fully
satisfied. 
 We need go no further. We hold that, on these facts, the
district court properly told the jury that it could (but need not)
draw a negative inference if the plaintiff proved by a
preponderance of the evidence that, when Wal-Mart destroyed the
documents, it had notice both of a potential lawsuit and of the
documents' relevance to the claim that underlay such a suit.

 Affirmed. Costs to appellee.