**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William A. WIDGERY, Sr.,**
**Defendant-Appellant.**

**No. 85–1068.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 1985.
Decided Nov. 25, 1985.

---

**15.** Seven of the eight unnamed plaintiffs in the *Sullivan* action were benefit claimants only.

R. Phillip Reed, Springfield, Ill., for defendant-appellant.

Bradley L. Williams, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUDAHY and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

William Widgery stands convicted of mail fraud and securities fraud. His trial lasted more than two weeks. The jury deliberated for one full day and parts of two others. During the deliberations the foreman of the jury sent the judge two notes. One accused another juror of intoxication; the other asked the judge "what we were to do if we couldn't reach a verdict or how long we were supposed to deliberate." In response to the first note the judge told the bailiff to watch the juror in question closely; in response to the second he had the bailiff tell the foreman to "keep on trying." Defense counsel did not learn about either note until the trial was over.

Both incidents were regrettable. Fed.R.Crim.P. 43(a) gives the defendant a right to be present at every stage of the trial, and this requires the court to share with defendant notes from the jury. Notes should be examined and answers given in open court. *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Shields v. United States,* 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927); *United States v. Clavey,* 565 F.2d 111 (7th Cir. 1977), *cert. denied,* 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978). To answer a note without consulting counsel may spoil a perfectly good trial for several reasons— not only because it denies defendant a procedural right but also because consultation may help the court to cure a genuine problem in the deliberations before it is too late. A response arrived at after hearing from the parties is more likely to be accurate than one delivered on the spur of the moment. In October 1984, 746 F.2d 1482 (7th Cir.), this court remanded the case with instructions to hold an evidentiary hearing to develop the nature and consequences of the irregularities.

The district judge found that the foreman's charge of a juror's drinking was unsupported. Seven other jurors testified that they had observed the juror in question throughout the trial; none detected an odor of alcohol on his breath or any signs of intoxication. The bailiff watched the juror and saw neither drinking at meals nor signs of drinking. The court found the foreman's contrary assertion false. The district judge also found that the inquiry about deliberations was the foreman's own doing. She did not discuss the note with the other jurors. The court characterized the note as "hypothetical," a "what if ..." inquiry about a problem of deadlock that never developed.

Widgery contests both conclusions. He also says that the judge should have disqualified himself under 28 U.S.C. § 455, both under § 455(a) because his impartiality may reasonably be questioned

and under § 455(b)(1) because he had knowledge of disputed evidentiary facts. Because Widgery never moved for disqualification in the district court, the argument under § 455(a) fails. Disqualification for the appearance of impropriety runs prospectively only; even a successful motion does not vitiate acts taken before the motion was filed. *United States v. Murphy*, 768 F.2d 1518, 1539–41 (7th Cir.1985). Disqualification under § 455(b) for an actual impropriety would indeed require a new hearing, but there is no basis for a § 455(b) motion here. Knowledge of disputed facts requires disqualification only if the knowledge has an extrajudicial source. *United States v. Coven*, 662 F.2d 162, 168 (2d Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). Were it otherwise, no judge could rule on post-trial motions claiming error in the conduct of the trial. The judge's knowledge of the facts here comes exclusively from the trial. Disqualification was unnecessary, and we turn to the merits.

■ The response to the foreman's charge of another juror's intoxication was appropriate, even though the judge should have consulted with both sides before acting. The bailiff's observations put the lie to the charge. There was no need for additional inquiry at the time; the hurling of accusations might have disrupted the deliberations to everyone's detriment. The subsequent inquiry confirmed the bailiff's observations. The judge's error in not showing the note to counsel was harmless under any meaning of that term.

The response to the foreman's note creates more substantial difficulties. The judge did not know at the time whether the jury was deadlocked. He did not know that the note was the foreman's doing. And he should have known that there was a risk that the foreman would have interpreted his answer as a direction to keep deliberating come what may—an anticipatory "dynamite" charge without the required remainder that each juror must reach his own conclusion and not give in just to produce a verdict.

As things turned out, none of this occurred. The jury was never deadlocked. The trial lasted 2½ weeks, and there were a total of 18 counts against two defendants. There were more than 150 exhibits. Deliberations began on April 27, 1983, at 1:05 p.m., and the jury separated at 9:00 p.m. The jurors went back to work at 10:00 a.m. the next day. The foreman sent the note to the court sometime that day. At 5:50 p.m. the court brought in the jury and asked whether it had reached any verdict. The foreman said no. The judge then asked whether the jurors thought they could reach a verdict if given additional time; all jurors nodded. On learning that the jury was not deadlocked, the judge allowed them to continue their work without further instructions. At 7:40 p.m. the jury returned four verdicts, convicting Widgery on two counts and acquitting the other defendant on two counts. The jury continued deliberating until 10:50 that evening. The next morning at 11:00 the jury convicted Widgery on the remaining 14 counts. It does not seem likely that the foreman's note and the court's answer had any influence on this.

■ Widgery asks us to bypass consideration of harmless error and reverse his conviction as an exercise of our "supervisory power." We do not have the power Widgery attributes to us. "Supervisory power" has two meanings that must be kept separate. Supervisory power sometimes means the authority to announce new rules that promote the administration of justice, even though neither constitution nor statute requires such rules. Long before Congress began to regulate criminal trials by statute, or the Supreme Court found a code of criminal procedure in the great generalities of the bill of rights, courts were adopting rules to govern proceedings before them. "Supervisory power" is just a new title for a very old practice. This common law power is the "supervisory power" that the Supreme Court invoked in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), *United States v. Hale*, 422 U.S. 171, 95

S.Ct. 2133, 45 L.Ed.2d 99 (1975), and similar cases, and that we invoked in *United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973) (en banc), to formulate instructions to be given to deadlocked juries. See also *United States v. Torres*, 751 F.2d 875, 878–80 (7th Cir.1984).

The other possible meaning of "supervisory power" is the one Widgery presses on us—a power to reverse judgments without requiring a demonstration that the error in question affected the outcome. Reversals of this character, it is said, will reinforce the rule in question. If a judge knows that reversal is automatic, he will follow the rule; if he knows that reversal depends on a showing of prejudice, he will be less likely to honor the rule. Appellate courts once took this view, becoming "impregnable citadels of technicality." Roger Trayner, *The Riddle of Harmless Error* 14 (1970). Congress enacted (or approved) harmless error rules to reverse that approach. Fed.R.Crim.P. 52(a) and 28 U.S.C. § 2111 require courts to disregard errors that do not affect "substantial rights." The supervisory power is part of the common law, and no court has a common law power to disregard a rule or statute that was within the authority of Congress to enact. The supervisory power permits a court to fill in interstices, not to "disregard the considered limitations of the law it is charged with enforcing." *United States v. Payner*, 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980). It therefore does not authorize a court to disregard the harmless error rules. See *United States v. Hasting*, 461 U.S. 499, 505–07, 103 S.Ct. 1974, 1978–79, 76 L.Ed.2d 96 (1983).

Sometimes it is so difficult to tell whether the violation of a rule has injured the defendant, and so likely that the violation did, that the violation cannot be harmless error. Some deprivations of the right to counsel are in this category. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The right to see a note from the jurors and comment on the response is not. *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). The lower courts in *Rushen* thought that the absence of a contemporaneous record made a harmless error inquiry impossible; the Supreme Court disagreed, holding that the prejudicial effect of a judge's failure to discuss with counsel communications from and to the jury "can normally be determined by a post-trial hearing." *Id.* at 119, 104 S.Ct. at 456. See also *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The communication in *Rushen* involved a juror's knowledge of evidentiary facts; there is no reason to treat differently a juror's hypothetical inquiry about deadlocks.

There remains the question whether the harmless error inquiry should be conducted under the statutory standard of effect on "substantial rights" or under the elevated standard that *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requires for deprivations of most constitutional rights. This court, like several others, has on occasion used the *Chapman* standard for a problem like the one we have here. Each time it has assumed without deciding that it is appropriate. E.g., *Ware v. United States*, 376 F.2d 717, 719 (7th Cir.1967). Cf. *United States v. Silverstein*, 732 F.2d 1338, 1348 (7th Cir.1984) (finding error harmless without specifying the standard of harmlessness). None of our cases has held, however, that a problem of this character violates the constitution. Both Rule 52(a) and § 2111 instruct courts what standard of harmless error to use, unless the constitution commands otherwise. Here it does not.

A judge's failure to show jurors' notes to counsel and allow them to comment before responding violates Fed.R.Crim.P. 43(a), not the constitution. *Krische v. Smith*, 662 F.2d 177, 178–79 (2d Cir.1981). Perhaps the exclusion of counsel from the process of answering the jury's note could be characterized as a deprivation of counsel for that incident or a violation of the sixth amendment's right to a public trial, but it would take argument to show why the sixth amendment requires this incident to

be public. The argument from the right to counsel is circular—there is a right to counsel at the reading and answering of the note only because Rule 43 requires the reading and answering to be done in an adversarial fashion, and if the court neglects to read the note to them, there is no proceeding at which counsel could appear.

■ The court's error does not violate the due process clause, either. The constitution does not require faultless adherence to rules that are not themselves part of the constitution. Unless a command may be found in the constitution—and Rule 43 is a more recent development than that—the due process clause requires "only the most basic procedural safeguards." *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). The question therefore is what the constitution would have required were there no Rule 43. Only a trial fundamentally unfair in light of the entire proceedings violates the open-ended aspect of the constitutional protection. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Widgery's trial was generally conducted according to the rules, and a single glitch in a lengthy trial does not create constitutional error. It may be that inquiry postponed is less likely to be accurate, but that is not the sort of defect that undermines the reliability of the entire trial. *Smith v. Phillips, Rushen v. Spain*, and *United States v. Gagnon*, —— U.S. ——, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), all hold that subsequent inquiries are constitutionally sufficient to assess events that occurred in the absence of defendant or his counsel or that affected the impartiality of the jury. Cf. *Ponte v. Real*, —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (a subsequent statement of reasons for not calling a witness is sufficient under the due process clause).

We think the correct characterization of the defendant's interest is the one offered by Justice Stevens in *Rushen, supra*, 464 U.S. at 126–27, 104 S.Ct. at 460 (concurring opinion): whether the defendant is entitled to see and comment on notes

and answers contemporaneously or only at some later time. The defendant has the right under Rule 43 to know the contents of the note and protest the judge's answer, but if the dispute is about the timing of the protest it is not one about fundamental constitutional rights. The majority found it unnecessary to consider Justice Stevens's conclusion (see 464 U.S. at 117–18 n. 2, 104 S.Ct. at 455 n. 2). More recently the Court held that a hearing with a juror in a judge's chambers from which all defendants and some counsel were excluded did not violate the constitution. *United States v. Gagnon, supra*, 105 S.Ct. at 1484–85. The constitutional right to be present (which carries with it the right to counsel) is designed to implement the right to confront adverse witnesses. *Gagnon* concluded that judges may conduct at least some non-testimonial proceedings outside the defendant's presence. The Court quoted with approval (105 S.Ct. at 1484) the gist of Justice Stevens's conclusion in *Rushen*.

■ In light of *Gagnon* and *Rushen*, we ask whether the delay in inquiring into the foreman's note and the court's answer affected Widgery's substantial rights. The answer is no. The district judge found that the jury was never deadlocked, a finding supported by the jurors' reactions in open court. The jury therefore would not have interpreted the court's response to the note as an instruction to keep going despite a deadlock, or as ordering any juror to abandon a position conscientiously held. The jurors took their time and came to verdicts when they were ready. We cannot even be sure that the members of the jury other than the foreman learned of the note and answer. Although the foreman testified that she discussed the court's answer with the other jurors, the district judge evidently did not believe this. Five times within his short opinion, the judge refers to the foreman's testimony as "incredible," "erroneous," or "lack[ing] credibility." The judge did not reject this bit of testimony in so many words, but his conclusion that the jury was never deadlocked and that the note was the foreman's own act reflect a

general disbelief of her testimony. The incident, regrettable though it was, did not affect Widgery's substantial rights.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting in part.

I can certainly accept the majority's view that the right of the defendant to see a note from the jurors and comment on the judge's response may in some cases be harmless. *See* at 329. The majority, however, gives inadequate weight to the principle that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is ... deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during trial, with full knowledge of the parties." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). We may assume for the moment that post-conviction proceedings are generally adequate to determine the effect of improper communications with the jury—a matter to which I shall turn later. But in any event, the defendant's burden is only to establish the improper contact; once shown, " 'the burden rests heavily upon the Government to establish ... that such contact with the juror was harmless to the defendant.' " *Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984) (per curiam), quoting *Remmer v. United States,* 347 U.S. at 229, 74 S.Ct. at 451. I am unable to see how the government met its burden here.

The majority concludes that the court's answer to the foreperson's second note and its failure to inform Widgery or his counsel before taking action did not affect Widgery's substantial rights. At 331. As a basis for its conclusion, the majority points to the district court's finding that the jury was never deadlocked—a conclusion which is allegedly demonstrated by the jurors' reaction in open court. The record, however, contrary to the majority's description of the proceedings,[1] does not support such a finding. Accordingly, I question the majority's conclusion that it was unlikely that the foreperson's note and the court's response had any influence on the deliberations. *See* at 328.

We do not know, as the majority speculates, that the foreperson did not discuss the court's response with the other jurors. At 330. Rather, the record suggests otherwise. The district court made no finding on this matter. The foreperson testified that the jury did discuss the second note and the court's answer, Transcript, Hearing of December 10, 1984 at 27, 48, and no other juror testified to the contrary. In fact, no one questioned the other jurors with respect to this matter. But this issue aside, influence on a single juror may be enough to necessitate reversal and remand. *Kiser v. Bryant Electric,* 695 F.2d 207, 215 (6th Cir.1982), citing *Aluminum Company of America v. Loveday,* 273 F.2d 499, 500 (6th Cir.1959) (per curiam), *cert. denied,* 363 U.S. 802, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). *See also Rushen v. Spain,* 464 U.S. 114, 130 n. 9, 104 S.Ct. 453, 462 n. 9, 78 L.Ed.2d 267 (Stevens, J., concurring) (jury deliberations "as a whole" influenced if one juror is improperly influenced). While it is impossible to say for certain what effect, if any, the judge's response had on all the other jurors, I believe that the response may well have prejudicially influenced at least the foreperson's deliberations. In fact, the foreperson made clear that the judge's response to her deadlock

---

**1.** As characterized by the majority, "[t]he judge ... asked whether the jurors thought they could reach a verdict if given additional time; all jurors nodded." At 328. The majority, however, obscures the true nature of the court's inquiry. The court in fact asked "how many of you feel that you will be able to arrive at a verdict as to any one or more defendants as to any one or more counts if given additional time

in which to deliberate?" The complications inherent in this question make it difficult to conclude that the jury was *not* deadlocked. The questionable aspect of the majority's reasoning is further reflected by the fact that the jury quite promptly afterward came back with a partial verdict, convicting Widgery on only two of sixteen counts and acquitting the other defendant on two counts.

note left her bewildered and was a factor in her decision-making.[2] Because I cannot say that the *ex parte* contact here was harmless (even under the less rigorous Rule 52(a) standard invoked by the majority), I am compelled to conclude that the government failed to meet the burden imposed by *Remmer v. United States.*

I am also troubled by the majority's conclusion that the trial judge's failure to show jurors' notes to counsel and allow them to comment before responding does not rise to the level of a constitutional violation. *See* at 329. A judge's failure to show jurors' notes to counsel and allow them to comment before responding undeniably violates Fed.R.Crim.P. 43(a). In addition, such an error may at least in some instances violate the constitution. *Cf.* at 329. The Supreme Court has recognized that a defendant has a due process right to be present contemporaneously at judge-juror communications when required "to ensure fundamental fairness or a 'reasonably substantial ... opportunity to defend against the charge.'" *United States v. Gagnon*, —— U.S. ——, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam), citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Defense participation *at the time* the jury informs the judge of an apparent deadlock is a matter of critical moment to a defendant. *See United States v. Chaney*, 559 F.2d 1094, 1098 (7th Cir.1977) (misunderstood instruction in response to possibly hung jury would "imped[e] a defendant's right to trial by the impartial jury and to due process"). The jury's notification to the court of a deadlock in its deliberations hardly qualifies as only a "minor occurrence" (or a "single glitch") in the course of a criminal trial. *Cf. United States v. Gagnon*, 105 S.Ct. at 1484–85.[3] The majority acknowledges that a defendant has a right under Rule 43 to know the contents of a juror's note and to protest the judge's answer. At 330. I think such a right implicates the minimum protections to which a defendant is entitled under the Due Process Clause: the right to notice and an opportunity to be heard in a meaningful manner and at a meaningful time. *See Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The majority, however, inexplicably passes on without so much as a word on this most basic of procedural safeguards. Quite to the contrary, it has concluded that "if the dispute is about the *timing* of the protest it is not one about fundamental constitutional rights." At 330 (emphasis added).

As noted, I can agree that "the prejudicial effect of a judge's failure to discuss with counsel communications from and to the jury 'can normally be determined by a post-trial hearing.'" At 329. Yet "normally" is not "always." *See Payne v. Wood*, 775 F.2d 202, 206 (7th Cir.1985). The circumstances which led the Supreme Court in *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam), to conclude that the prejudicial effect of the unrecorded *ex parte* communications which took place there could be adequately remedied by a post-trial hearing are absent here. In *Rushen* the *ex parte* communication dealt with a juror's bias in a matter unrelated to the specific issues that the juror was called upon to decide.[4] In-

**2.** The foreperson testified that, upon receipt of the court's answer:

> I didn't know what to do after that. I mean I didn't send any more notes that I recall that we were deadlocked. I mean we just decided he had said we had to keep trying.

Transcript, Hearing of December 10, 1984 at 27.

**3.** The majority concedes that the deadlock note and the trial judge's action in response pose a difficult problem. At 328. "The judge did not know at the time whether the jury was deadlocked.... And he should have known that there was a risk that the foreman would have interpreted his answer as a direction to keep deliberating come what may...." *Id.* Indeed, the district court observed "that the jury was eleven to one for conviction. [The foreperson] being the one." [sic] Transcript, Hearing of December 10, 1984 at 131.

**4.** During the course of a 17-month long trial, the prosecution introduced certain evidence to impeach a defense witness. The testimony prompted one juror's recollection of the murder of a childhood friend. The juror twice ex-

deed, the defendant in *Rushen* did not contend that whatever bias the juror harbored against him was the result of the conversations with the trial judge. As such, the case is not very different from one where defense counsel has learned of the juror's potential bias in the course of the trial, and the trial judge has denied a motion for a hearing in the middle of trial, but instead has held a post-trial hearing. *Rushen v. Spain*, 464 U.S. at 126 n. 5, 104 S.Ct. at 460 n. 5 (Stevens, J., concurring). The post-trial hearing in *Rushen* established that the incident did not impair the juror's impartiality. The juror repeatedly testified to this effect. *Rushen v. Spain*, 464 U.S. at 120–21, 104 S.Ct. at 457. The Court further emphasized that the *ex parte* communication was "innocuous" and did not involve "any fact in controversy or any law applicable to the case." *Id.* at 121, 104 S.Ct. at 457. The circumstances of the trial judge's error here, however, are of a more serious and elusive nature, and the prejudicial effect of the error is not of a sort that can be adequately determined at a post-trial hearing.

Cases such as the one before us frequently turn upon the testimony of the juror who has approached the judge. *See*

*Smith v. Phillips*, 455 U.S. 209, 217 n. 7, 102 S.Ct. 940, 946 n. 7, 71 L.Ed.2d 78 (1982). At the same time, the Federal Rules of Evidence severely limit a defendant's inquiry into the effect of outside contact on the jury's deliberations. *See* Fed.R. Evid. 606(b).[5] I cannot help concluding that where, as here, a defendant is precluded from offering, due to the timing of the hearing, significant and relevant testimony, such a hearing is frequently meaningless.[6]

The majority, however, essentially brushes aside the important ramifications of the trial judge's error by clinging to the district court's finding that the jury was never deadlocked, a finding based upon subsidiary facts for which I find no support in the record.[7] I therefore respectfully dissent.

---

pressed her concern to the trial judge that she might lose her composure if the murder of her friend were explored in more detail. Quite collaterally the evidence also raised a question of imputed bias against the Black Panther Party and therefore against defendant Spain through his membership in the Black Panther Party. (The testimony revealed that the murderer of the juror's friend was a Black Panther.) On each occasion the judge asked the juror whether her disposition of the case would be affected, and she assured him that it would not. The judge made no record of either conversation, and he did not inform the defendants or their counsel about them. *Rushen v. Spain*, 464 U.S. at 115–16, 104 S.Ct. at 454.

**5.** *Rule 606(b) reads as follows:*

Inquiry into validity of verdict or indictment. —Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indict-

ment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

**6.** While a juror may not testify as a witness in the trial of the case in which he is sitting as a juror, Fed.R.Evid. 606(a), the Rules do not otherwise prohibit inquiry of a juror before a verdict is reached. *See* Fed.R.Evid. 606(b).

**7.** No juror, other than the foreperson, testified as to the jury's deadlocked deliberations. While one juror testified that she did not know whether there were any notes written to the court, no juror was asked about the alleged deadlock, and therefore there was no other testimony on this subject.