

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2003

# USA v. Toliver

Precedential or Non-Precedential: Precedential

Docket No. 01-4469

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Toliver" (2003). *2003 Decisions*. Paper 423.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/423

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 4, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4469

UNITED STATES OF AMERICA

v.

JEREMIAH D. TOLIVER,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 01-cr-00008E)
District Judge: Honorable Maurice B. Cohill, Jr.

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2002

Before: BARRY and AMBRO, *Circuit Judges*,
DOWD,* *District Judge*

(Opinion filed: June 4, 2003)

---

* Honorable David D. Dowd, Jr., Senior United States District Judge for
the Northern District of Ohio, sitting by designation.

Renee Pietropaolo, Esq.
Karen S. Gerlach, Esq.
W. Penn Hackney, Esq.
Appellate Attorney
Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
    *Attorneys for Appellant*

Christian A. Trabold, Esq.
Assistant U.S. Attorney
100 State Street, Suite 302
Erie, PA 16507
    *Attorney for Appellee*

---

## OPINION OF THE COURT

---

AMBRO, *Circuit Judge*.

Jeremiah D. Toliver was convicted by a jury in the Western District of Pennsylvania of violating 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon). During jury deliberations, the District Court answered a jury question without first notifying either the defendant or defense counsel. Toliver argues on appeal that this violated his Fifth and Sixth Amendment rights to be present at every stage of trial, as well as his Sixth Amendment right to counsel.[1] While the District Court's manner of handling the jury's inquiry was incorrect, it nonetheless was harmless. Thus we affirm.[2]

---

1. Toliver also claims that 18 U.S.C. § 922(g)(1) is an unconstitutional exercise of Congress's Commerce Clause powers. He acknowledges, however, that this challenge is foreclosed by our decision in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), and raises the issue only to preserve the claim for review in the event of a subsequent change in the law.

2. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

## I.   FACTUAL BACKGROUND

On April 3, 2000, the Erie Police Department received a 911 call from the home of Ethel Easter, stating an unwanted guest — Toliver — would not leave. Toliver had previously lived with Easter, but the two had separated. Toliver was present on this particular evening at Easter's invitation to have dinner, but after they had a dispute about another boyfriend of Easter's, she demanded that Toliver leave. He refused, and Easter called Toliver's mother, Anita Grey, with whom he lived, to come and get him. Toliver's mother arrived, but he protested that he would not leave until he retrieved his gun, which he believed to be in Easter's bedroom. Easter told him she would not return the gun because he was already on probation. After at least two hours of arguing, Easter and Grey could not persuade Toliver to depart, and Easter's 18-year-old nephew, Jason, called the police.

Jason met the police at the door, and led them upstairs toward Easter's bedroom. While on the stairs, the two officers and Jason heard a male voice say that he wanted his gun back, and would not leave the house without it. The officers entered the bedroom, where Toliver, Grey, Easter, and Justin Barnett (Easter's 15-year-old nephew) were present.[3] Easter told the officers that the gun was in the room inside her golf bag. The officers retrieved the weapon, a shotgun with a modified barrel and obliterated serial number.

The defense's theory at trial was that the gun belonged to Easter, a police dispatcher who feared she would be fired if charged with a crime. The defense called at least four of Easter's coworkers on the Erie police force to undermine her credibility, and each testified that they believed her to be an untruthful person.

The jury recessed at 12:05 p.m. on August 15, 2001. At

---

3. There was conflicting testimony at trial as to whether Justin also was in the bedroom at this time. Officers Kensill and Letkiewicz testified that they did not see any males in the bedroom other than Toliver. However, Easter, Jason, and Justin each testified that Justin was in the bedroom when the officers entered.

3:35 p.m., the District Court reconvened in chambers, with defense counsel participating by telephone, to discuss a response to a question submitted by the jury. Before doing so, the judge informed both sides that this actually was the second question the jury had asked, and that he had answered the first without notifying counsel. The following exchange occurred:

THE COURT: This is Judge Cohill. And we got a question here, and I just think — I know the answer, but I just wanted — we had another one, too, that I didn't — about fifteen minutes before the second one came in — I didn't need to consult with the lawyers on that.

Does that look okay to you?

MR. TRABOLD: Perfect.

THE COURT: This was question No. 1. I have Marshall Piccinini and Chris Trabold here, and I have got the Court Reporter. Anyway, question No. 1 was:

Your Honor

One question keeps coming up repeatedly — whether the male voice in the bedroom was heard to say
Quote: "Give me the gun" or
Quote: "Give me the gun back"
Can we check the testimony of both:
Corporal Kensill
Officer Letkiewicz
regarding their statement as to what they stated that they heard[.]

And I had our Court Reporter do this transcript and I have sent this excerpt from the transcript up.

Q: And what is it specifically, if anything, that you hear said about a gun as you go up the stairs?

[Corporal Kensill]: I heard a male state that he wanted his gun back.

—————————

> [Officer Letkiewicz]: . . . And on the stairway, we heard a male voice saying I want my gun, give me my gun back. And the female exchanges back, I'm not giving you your gun back. And he said, I want my gun back. And after this took place a few times, we continued to approach upstairs.

That's what I sent up to the jury. Any problem with that?

MR. PATTON: Um, I would have preferred that they not have anything sent to them. They are supposed to rely on their collective memories.

THE COURT: When they are asking for a specific quote, I think they are entitled to it. I mean, this is — both the quotes that they are quoting are incorrect as well.

I mean, you know, if you object to that, why, okay, but I am going to overrule the objection.

MR. PATTON: I would have objected to them being provided any specific testimony, but — I mean, I understand — if you consider that to be an objection, I understand you're overruling it and you sent it up to them.

THE COURT: Right.

MR. PATTON: Okay.[4]

After the jury had retired for the evening at 4:55 p.m., defense counsel again objected, stating that he would have opposed any testimony being provided to the jury, and if any transcripts were sent out, defense counsel would have asked that the officers' entire testimony be submitted. Defense counsel did not, however, request that a supplemental cautionary instruction be given, and the District Court again overruled the objection.

---

4. Following this colloquy, the District Court and counsel for both sides agreed on an answer to the jury's second note, which asked whether the failure to prove that Toliver was aware of the length of the shotgun barrel, an element of the offenses charged in the remaining counts, negated the possibility of conviction on those counts.

The jury resumed deliberations the next morning at 9:00 a.m., and at 10:10 a.m. again requested excerpts from the trial transcripts. The District Court agreed with counsel for both sides that it was physically impossible to provide the sought-after material, and instructed the jury to rely on its collective memory.[5] Defense counsel did note, however, that the jury may question this denial after the District Court previously had complied with its first request. At 11:25 a.m. the jury reached its verdict, convicting Toliver on the charge of being a felon in possession of a firearm, and acquitting him on the charges of possession of an unregistered firearm and possession of a firearm with an obliterated serial number. This appeal followed.

---

5. The jury's second request for testimony (and third note overall) stated:

> The jury is requesting to see three parts of the testimony:
>
> 1. From Officer Letkiewicz —
>    Testimony regarding who answered the door and what was said when they entered — regarding who was upstairs in the bedroom.
>
> 2. From Jason Easter —
>    Testimony regarding what he said to the police regarding who was upstairs when they (police) entered the house.
>
> 3. From Ethel Easter —
>    Testimony after she defined the cost of the gun — we would like to see the testimony.

The District Court responded as follows:

> Members of the Jury, you have requested a number of excerpts from the trial transcripts. It is simply impossible to supply these to you.
>
> You may recall that after you were sworn as jurors, I instructed you as follows:
>
> > Some people think that the jury will have available to it a copy of the transcript — that is, what the court reporter records during the trial. That is not so. You are expected to use your own memories to recall what was said in the testimony.
>
> As I instructed you, you will have to rely on your collective memory.

## II.  PRINCIPLES OF LAW INVOLVED

Toliver alleges that the District Court's failure to disclose to counsel the jury's note before responding violated his Fifth Amendment right to due process, Sixth Amendment rights to counsel and to be present at every stage of his trial, and Rule 43(a) of the Federal Rules of Criminal Procedure. The Government acknowledges that the District Court may have "compromised" Toliver's constitutional and statutory rights (and we agree), but it asserts that "the court's error was harmless." Appellee's Br. at 25. Toliver counters that any error precludes harmlessness, as it is *per se* reversible. Our initial task, therefore, is to determine whether harmless error analysis applies to these circumstances. Because this involves the interpretation of the Constitution and the Federal Rules of Criminal Procedure, our review is plenary. *United States v. Bertoli*, 40 F.3d 1384, 1397 (3d Cir. 1994).

A.  Does Harmless Error Analysis Apply to Toliver's Alleged Denial of his Constitutional Right to Presence During his Criminal Proceeding?

A defendant's constitutional right to be present at every stage of his or her criminal proceeding is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). The right is also mandated by Fed. R. Crim. P. 43(a), which, at the time of Toliver's trial, provided that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."[6] The Supreme Court has stated that "[c]ases interpreting [this] Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that [a] jury's message should [be] answered in open court and that petitioner's counsel

---

6. Toliver was convicted on August 16, 2001. Effective December 1, 2002, Rule 43(a) requires that "the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing."

should [be] given an opportunity to be heard before the trial judge respond[s]." *Rogers v. United States*, 422 U.S. 35, 39 (1975). Yet the *Rogers* Court also stated that "a violation of Rule 43 may in some circumstances be harmless error," subject to Fed. R. Crim. P. 52(a).[7]

We encountered a situation similar to that of Toliver in *United States v. Neal*, 320 F.2d 533, 536 (3d Cir. 1963), where we declined to analyze for harmlessness a Rule 43 violation involving the trial judge's answer to a jury's question in the defendant's absence. The jury in that case sent a note asking if it may recommend mercy for the defendant. The judge responded that the jury could make the recommendation, but the court might be constrained to disregard it. The judge did not tell the jury that the offense carried a mandatory minimum sentence. At the time of this exchange, the defendant was not present, and the record was unclear whether defense counsel was present. We noted that, although it was not necessary to reach the Government's argument that the error was harmless, that asserted defense was without merit.

> This contention ignores the fact that this jury was deadlocked for a two-day period on the issue of the guilt or innocence of the defendant, and the fact-of-life that one or more of the jurymen might have been persuaded to 'go along' with the guilty verdict in the mistaken belief that the 'leniency' recommendation would result in nothing more than a suspended sentence or a few months imprisonment.

*Id.* at 536.

Other circuit courts have more directly (and more recently) addressed whether a violation of a defendant's constitutional and statutory rights to be present in all trial phases is properly subject to harmless error analysis, with many concluding that it is. *See, e.g., United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1111 (9th Cir. 2002); *United States v. Sylvester*, 143 F.3d 923, 928-29 (5th Cir.

---

7. *Id.* at 40. Prior to its revision on December 1, 2002, Rule 52(a) provided that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

1998); *United States v. Coffman*, 94 F.3d 330, 335-36 (7th Cir. 1996); *United States v. Gomez*, 67 F.3d 1515, 1528 (10th Cir. 1995); *United States v. Harris*, 9 F.3d 493, 499 (6th Cir. 1993).

But to say that harmless error analysis applies when a trial judge answers a jury's note without the defendant or his counsel being present — and we follow the lead of other circuit courts in concluding that it does — does not complete our inquiry, as we still must determine the proper test for harmless error. For example, errors that violate a defendant's constitutional rights require the Government to prove harmlessness "beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). A more lenient standard, applied to errors affecting nonconstitutional trial rights, inquires whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Despite their general agreement that a trial judge's error in replying to a note from the jury in the absence of the defendant or defense counsel does not require reversal if it was harmless, circuit courts have not uniformly decided which standard to apply. *See Gonzalez-Gonzalez v. United States*, 2002 WL 31416029, at *2 n.2 (1st Cir. Oct. 29, 2002) (reiterating that "[w]e have yet to decide whether the appropriate test for harmlessness in this context is that set forth" in *Chapman* or *Kotteakos*, and declining to do so in that decision); *Krische v. Smith*, 662 F.2d 177, 179 (2d Cir. 1981) (noting that "[t]he several decisions in this circuit reviewing the conduct of a trial judge in sending messages to a deliberating jury without notice to defendant or his counsel uniformly ha[ve] been decided without any significant distinction between the two standards," but more recently the Second Circuit "has found reversible error by applying only the *Kotteakos* standard"); *Sylvester*, 143 F.3d at 929 (not indicating the specific standard applied by the Fifth Circuit, but finding that error in that case was harmless because the appellants "ha[d] not shown prejudice or coercion" resulting from the judge's response to the jury's note); *Harris*, 9 F.3d at 499 (stating that errors involving a defendant's right to presence under Rule 43(a) "must be considered with Rule 52(a) . . . providing that harmless error is to be disregarded," and in the Sixth

Circuit "the standard asks whether there is 'any reasonable possibility of prejudice'") (internal citation omitted); *Coffman*, 94 F.3d at 336 (noting that in the Seventh Circuit a violation of Rule 43(a) "does not entitle the defendant to a new trial if it is unlikely to have affected the jury's verdict").

Our precedent discussing in other contexts the deprivation of a defendant's right to be present at every stage of the criminal proceeding also provides guidance. In *United States v. Alessandrello*, 637 F.2d 131 (3d Cir. 1980), we applied harmless error analysis where the defendants were excluded from a portion of jury *voir dire*, implicating their Rule 43 right to be present at the impaneling of the jury. After citing the Supreme Court's decision in *Rogers*, 422 U.S. at 40, for the proposition that "[a] violation of Rule 43 in some circumstances may be harmless error," we stated that "[i]f there is no reasonable possibility of prejudice from the error, it is deemed harmless." 637 F.2d at 138, 139. Because the defendants were absent from only a small part of the *voir dire* questioning, we concluded that the error was indeed harmless. *Id.* at 141.

Most recently, in *United States v. Faulks*, 201 F.3d 208 (2000), we held that a Rule 43 violation involving the sentencing of a defendant by written judgment, instead of orally and in his presence, required automatic vacatur and resentencing. Writing for the Court, Judge Becker stated that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Id.* at 211 (quoting *Illinois v. Allen*, 397 U.S. 337, 338 (1970)). Thus, Rule 43's requirement that a defendant be present at sentencing "is a fundamental procedural guarantee that places the defendant before the judge at a culminating moment of the criminal justice process." *Id.* Most important for our purposes, the *Faulks* Court noted that although our Circuit had applied harmless error analysis in the past (and cited *Alessandrello* as an example), it would not do so in that case. *Id.* at 212. The Government had not argued that any error was harmless. Moreover, "[e]ven if we were to employ harmless error analysis, resentencing remains appropriate." *Id.* at 213.

> The Rule 43 error in this case implicates constitutional concerns, *see United States v. Bertoli*, 40 F.3d 1384, 1397 (3d Cir. 1994) ("The due process clause of the Fifth Amendment grants criminal defendants the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings . . . .'" (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975))), making the establishment of harmlessness more difficult. Given that there are still significant discretionary elements in the sentencing decision of the District Court, we cannot be sure that "there is no reasonable possibility," *Alessandrello*, 637 F.2d at 139, that the District Judge's failure to impose Faulks's sentence in his presence had no effect on the duration of the sentence imposed.

*Id.*

From this passage, as well as the principles expressed in our other right to presence cases, we draw the following conclusions. First, harmless error analysis remains generally applicable to Rule 43 violations. Second, while the denial of a defendant's right to be present at every stage of trial violates his statutory rights under Rule 43, it also implicates the constitutional protections on which the Rule is founded. Thus, we will review for harmless error the alleged deprivation of Toliver's Fifth Amendment due process and Sixth Amendment presence rights — as reflected in Rule 43 — under the *Chapman* standard reserved for constitutional errors; *i.e.*, the Government must prove beyond a reasonable doubt that the defendant was uninjured by the error. Phrased somewhat differently, as we stated in *Alessandrello* and reiterated in *Faulks*, there must be "no reasonable possibility" of prejudice for an error to be deemed harmless. *Id.* (quoting *Alessandrello*, 637 F.2d at 139).

    B.   Does Harmless Error Analysis Apply to Toliver's Alleged Deprivation of his Sixth Amendment Right to Counsel?

We next consider whether harmless error analysis may be applied to the alleged deprivation of Toliver's Sixth Amendment right to counsel. "The presumption that

counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *United States v. Cronic*, 466 U.S. 648, 659 (1984). "Under such circumstances, '[n]o specific showing of prejudice [is] required,' because [without counsel] 'the adversary process itself [is] presumptively unreliable.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (quoting *Cronic*, 466 U.S. at 659). In other words, if counsel is denied at a critical stage of trial, it is prejudice *per se*, mandating automatic reversal.

Toliver argues that the trial judge's action in this case deprived him of his Sixth Amendment right to counsel at a critical stage of the proceeding, in violation of *Cronic*. In support of his argument, Toliver relies on decisions of other federal circuits involving the absence of counsel during the court's delivery of supplemental jury instructions. For example, in *Curtis v. Duval*, 124 F.3d 1 (1st Cir. 1997), the defendant was charged with second-degree murder. The trial judge, acting *sua sponte*, delivered to the jury a supplemental instruction on the lesser included offense of manslaughter without defense counsel present. The First Circuit, reviewing the appeal of a *habeas* claim, agreed with the petitioner that "recalling the jury for supplementary instructions after deliberations are underway is a critical stage of a criminal trial," and that "giving a *sua sponte* jury instruction without consulting, and in the absence of, the defendant's attorney . . . denies the defendant the assistance of counsel at that critical stage." *Id.* at 4-5. The *Curtis* Court further stated that, if the Supreme Court's decision in *Cronic* had retroactive application to the facts of that case (it did not), a structural error of this type would have required automatic reversal. *Id.* at 5-7. Similarly, in *French v. Jones*, 282 F.3d 893, 898 (6th Cir.), *vacated*, 535 U.S. 1109 (2002), the Sixth Circuit likewise stated that a supplemental jury instruction is a critical stage of a criminal proceeding. Accordingly, harmless error analysis did not apply in that case to the trial judge's delivery, in the absence of defense counsel, of a supplemental instruction to a deadlocked jury. *Id.* at 900-01.

We are unpersuaded by Toliver's attempt to bring his claim under *Cronic*. The trial judge's response to the jury in

this case was not akin to the supplemental jury instructions in *Curtis* and *French*. Clarifying the substantive elements of the charged offense (*Curtis*) or instructing a deadlocked jury (*French*) affirmatively guides jurors as to how they should fulfill their decisionmaking function. But submitting verbatim specifically excerpted record testimony that the jury itself had requested does not similarly "instruct" the jury.

Moreover, the cases Toliver cites are only marginally instructive. The Sixth Circuit's decision in *French v. Jones* recently was vacated and remanded for further consideration in light of *Bell v. Cone*, 535 U.S. 685 (2002).[8] Moreover, the First Circuit recently recognized, albeit in an unpublished decision, that "[d]octrinally speaking . . . prejudice *per se* is hen's-teeth rare," and that its opinion in *Curtis* did not broaden the limited circumstances in which *Cronic* may be invoked. *Gonzalez-Gonzalez v. United States*, 2002 WL 31416029, at *2 (1st Cir. Oct. 29, 2002). We note further that while there exist factually analogous cases brought under the Sixth Amendment right to be present at every stage of trial (discussed above), almost none are styled as Sixth Amendment right to counsel claims. For example, in *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1110 (9th Cir. 2002), a case cited by Toliver in arguing a violation of his right to counsel, the Ninth Circuit "found that the delivery of a supplementary jury instruction constitutes a 'critical stage' of a trial for which the defendant's presence (or that of his counsel) is constitutionally required . . . ." But the *Rosales-Rodriguez* Court did not discuss, much less apply, *Cronic*, and instead affirmed the defendant's conviction because the errors were harmless beyond a reasonable doubt. *Id.* at 1111.

---

8. *Jones v. French*, 535 U.S. 1109 (2002). In *Bell* the Supreme Court held, *inter alia*, that a *habeas* petitioner's claim for relief based on his counsel's waiver of closing argument during capital sentencing should have been analyzed under the ineffective assistance of counsel principles in *Strickland v. Washington*, 466 U.S. 668 (1984), and not the rule in *Cronic* that defendants need not establish prejudice if their right to counsel is denied during a critical stage of the criminal proceeding. 535 U.S. at 693-98.

In fact, we are aware of only one case, decided by the Seventh Circuit, that addressed whether harmless error analysis applies to asserted violations of a defendant's right to counsel in these circumstances. In *United States v. Widgery*, 778 F.2d 325 (7th Cir. 1985), during jury deliberations the trial judge received two notes from the foreman. The first stated that another juror was intoxicated, and the second inquired about what it should do in the event of a hypothetical deadlock. As to the first note, the judge instructed the bailiff to watch the accused juror closely. As to the second, the judge told the bailiff to tell the foreman to "keep on trying." *Id.* at 327. Defense counsel was not informed of either note until after the trial had concluded. The Seventh Circuit recognized that Fed. R. Crim. P. 43(a) provided a defendant the right to be present at every stage of trial, including contemporaneous access to jury notes, which should be examined and answered in open court. *Id.* (citing *Rogers*, 422 U.S. at 35; *Shields v. United States*, 273 U.S. 583 (1927)). But the *Widgery* Court further stated:

> Sometimes it is so difficult to tell whether the violation of a rule has injured the defendant, and so likely that the violation did, that the violation cannot be harmless error. Some deprivations of the right to counsel are in this category. *Geders v. United States*, 425 U.S. 80 (1976). The right to see a note from the jurors and comment on the response is not. *Rushen v. Spain*, 464 U.S. 114 (1983).

*Id.* at 329. Although *Widgery* was decided one year after *Cronic*, the Seventh Circuit did not address whether a trial judge's response to a note from the jury constituted a critical stage of the criminal proceedings. The Court did explain, however, that "[a] judge's failure to show jurors' notes to counsel and allow them to comment before responding violates Fed. R. Crim. P. 43(a), not the [C]onstitution." *Id.* It described as "circular" the argument that this is a denial of the right to counsel:

> [T]here is a right to counsel at the reading and answering of the note only because Rule 43 requires the reading and answering to be done in an adversarial fashion, and if the court neglects to read the note to

them, there is no proceeding at which counsel could appear.

*Id.* at 330.

We agree with the Seventh Circuit that harmless error analysis applies to Toliver's claim that the trial judge's failure to consult with defense counsel before responding to a jury note violated his right to counsel. We do not agree, however, that Toliver asserts an infringement of only his statutory rights. As we discussed in the context of Toliver's right to presence claim, the protections codified in Rule 43 are grounded in the language of the Fifth and Sixth Amendments. For this same reason, we review the alleged deprivation of Toliver's Sixth Amendment right to counsel — as reflected in Rule 43 — under the *Chapman* standard for constitutional errors. The Government therefore must prove harmlessness beyond a reasonable doubt, *i.e.*, there must be no reasonable possibility that the District Court's error prejudiced the outcome of Toliver's trial.

### III.  APPLICATION OF PRINCIPLES OF LAW TO THIS CASE

Applying these principles of law to Toliver's case, we must determine, beyond a reasonable doubt, if he was harmed. As a prelude, we note that the propriety of providing excerpted transcripts of witness testimony is an issue we confronted in *United States v. Bertoli*, 40 F.3d 1384 (3d Cir. 1994). There the jury on several occasions during its deliberations requested transcripts of what ultimately would be the entire testimony of twelve witnesses. We noted that we previously had held that a trial court has broad discretion to accede to a jury's request to have witness testimony read back to them, but that we had not addressed the similar practice of complying with a jury's request for written transcripts. The defendant argued that submitting written transcripts posed different dangers than those present when testimony is read to the jurors a second time, but our Court concluded that "we do not believe that the distinctions between reading testimony to the jury and providing the jury with copies of written testimony are sufficient so that we should apply different considerations

when reviewing determinations by the court to supply them." *Id.* at 1400. Accordingly, we joined other courts that had considered the issue and held that a trial judge's decision to supply transcripts is reviewed for an abuse of discretion. *Id.* (citing cases).

This case, of course, presents a slightly different issue — not simply the propriety of the trial judge's granting the jury's request for a transcript of specific testimony, but the propriety of doing so without first consulting, and in the absence of, the defendant or defense counsel. *Bertoli* is still relevant, however, as it outlines certain dangers the trial court must take into account and protect against.

> For instance, in their review of a transcript, jurors may seize upon an answer without focusing on limitations or qualifications developed during cross-examination. If the request poses such a danger, the court should give the attorneys an opportunity to make sure that the transcript incorporates all appropriate and relevant aspects of the requested testimony. Moreover, although it did not happen in this case, the district court generally should accompany the transcripts with a cautionary instruction to focus on the entire testimony and evidence.

*Id.* at 1400-01. For three reasons, we concluded in *Bertoli* that the trial court in that case had not abused its discretion. First, "[t]he jury requested the transcripts of 12 witnesses, so the danger of giving undue weight to particular testimony was minimized." *Id.* at 1401. Second, "Bertoli fails to specify a single example in the procedure the court followed that presented a particularized danger of prejudice." *Id.* And finally, "the district court adequately informed the jury that it was to consider the entire body of evidence submitted in the case, and not to emphasize unduly one piece of evidence over another." *Id.*

The facts in our case, counterposed to those in *Bertoli*, point to many of the perils that may result from judge-jury interaction in the absence of counsel. The jury here requested the testimony of only two prosecution witnesses, and only a single specific statement by each officer. Also, by not informing counsel of the jury's note before responding,

the trial judge foreclosed any opportunity for the defense to argue against submitting the testimony at all, or at least to argue that the transcript should include relevant portions of cross-examination. Moreover, the excerpted transcript submitted by the trial judge was not accompanied by any cautionary reminder that the jury was to consider carefully the entire body of evidence in the case. In other words, the safeguards we found persuasive in *Bertoli* are not present here. Put another way,

> the real harm is . . . that the aggrieved party will have lost the value of the chance: the opportunity to convince the judge that some other or different response would be more appropriate, the circumstances considered. . . . [I]t is entirely plausible that defense counsel, if seasonably apprised, might successfully have prevailed upon the district court to withhold the written version, or to [add a] supplemental instruction . . . at least to remind the jury of its obligation to heed the charge as a whole. Being kept in the dark, defense counsel was powerless to prime the pump of persuasion.

*United States v. Parent*, 954 F.2d 23, 26 (1st Cir. 1992) (internal citation, quotation omitted).[9]

Hence we conclude that Toliver's counsel should have been consulted concerning the jury's first transcript request and been present during the District Court's communication to the jury. However, we glean no particular prejudice to Toliver by the trial judge submitting to the jury, with or without the presence of Toliver's counsel, correct excerpts of limited trial testimony.

---

9. *Parent* involved, however, the trial court providing to the jury a written supplemental instruction on the key issue of constructive possession. As the trial judge in this case submitted excerpts of witness testimony, and not an instruction on the applicable law, the concerns of the *Parent* Court do not apply here with equal force. While defense counsel for Toliver asserts on appeal that, had he been given notice of the jury's request, he would have argued that the jury be told (as initially instructed) to rely on its collective memory, the trial judge denied this objection (albeit *ex post*).

\* \* \* \* \*

Should counsel have been consulted on the jury's initial request to receive portions of trial testimony and been present during any judge-jury communication? The answer is undoubtedly yes. Indeed, the District Court pursued this path for subsequent requests. Had it done so here as well, we would have no issue. Yet errors in circumstances like this case can be harmless. Here we cannot conclude that there is a reasonable possibility that the judge's dissimilar response to the requests prejudiced Toliver's trial in any meaningful way. Thus any error was harmless, and we affirm.

A True Copy:
     Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*