

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-26-2006

# USA v. Segura

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5170

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Segura" (2006). *2006 Decisions.* Paper 23.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/23

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5170
_____

UNITED STATES OF AMERICA

v.

DAVID SEGURA,

Appellant.


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 99-cr-00048-2)
District Judge: Hon. Bruce W. Kauffman
Argued November 8, 2006

Before:  SLOVITER, CHAGARES, and GREENBERG, <u>Circuit</u> <u>Judges</u>.


_____


(Filed: December 26, 2006)


<u>Counsel for Appellant</u>

Lowell K. Chotiner (Argued)
437 Chestnut Street
Suite 905
Philadelphia, PA 19106


<u>Counsel for Appellee</u>

Karen L. Grigsby (Argued)
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Appellant David Segura appeals his conviction for conspiracy to distribute more than 50 grams of crack cocaine. In this appeal, Segura argues that there is insufficient evidence to support his conspiracy conviction. Segura also raises three challenges pertaining to the adequacy of the Criminal Information. Because we find no reversible error, we will affirm.

I.

As we write only for the parties, our summary of the facts is brief. On December 9, 1998, police officer Jose Colon, posing as a buyer, called Ylsia Otto Segura ("Ylsia") to inquire about purchasing crack cocaine from him, which he had done on three prior occasions. Ylsia then called his cousin, appellant David Segura, regarding Colon's request. While Ylsia was conferring with Segura at Segura's residence, Colon again called Ylsia on his cell phone to inquire if he had the crack. Ylsia informed Colon that he could sell him two ounces; Colon responded that he wanted four. When Ylsia relayed

2

this request to Segura, Segura responded that he would obtain the quantity of crack Colon wanted, and that once he had done so, he would call Ylsia to pick up the full amount.

Later that day, Segura called Ylsia to inform him that Ylsia could pick up the crack Colon had requested. Ylsia then returned to Segura's house, where Segura produced four ounces of crack and weighed the drugs in front of Ylsia. Ylsia took the drugs, telling Segura that he would return with the money. Ylsia did not repackage the crack.

At approximately 6:20 p.m., Ylsia met Officer Colon in the parking lot at the Queen City Diner in Reading, Pennsylvania, a meeting place Colon had selected in advance. After Ylsia delivered approximately 109 grams of crack to Colon, DEA agents arrested Ylsia.

Ylsia agreed to cooperate with police, and immediately identified Segura as his supplier. Ylsia also agreed to make a recorded phone call to Segura. Before he could do so, many of the officers present at the scene were called away to respond to a shooting in progress, and the call was delayed until these officers returned. Meanwhile, two officers waited with Ylsia. While the three men waited, Ylsia's cell phone rang multiple times. Each time, Segura's cell phone number appeared on Ylsia's caller ID.

When the other officers returned, Ylsia made the recorded phone call to Segura. At the direction of the officers, Ylsia informed Segura that the crack buyers were unhappy with the weight and quality of the crack Ylsia had sold them. Segura replied that Ylsia was welcome to come get the scale to verify that the crack did in fact weigh four ounces. Segura then backtracked somewhat, saying, "Like we've got time to play

3

games." Segura concluded by telling Ylsia to tell the buyers that he (Segura) guaranteed the weight and quality of the drugs, and that if the buyers had concerns about the drugs they could call him.

At approximately 8:15 p.m., Ylsia told Segura in another recorded phone call that he was coming over to Segura's residence with the money from the sale to Colon. When Ylsia arrived, however, Segura was not home. Segura surrendered to police the following day.

On January 27, 1999, a grand jury returned a two-count indictment charging both Segura and Ylsia with one count of conspiracy to distribute more than 50 grams of crack, and with one count of distribution of more than 50 grams of crack.

On June 9, 1999, Segura proceeded to trial. Ylsia, who had previously pled guilty in connection with this case, testified for the Government. For his part, Segura argued that Ylsia's brother in New York, not Segura, was Ylsia's supplier. The jury apparently did not believe Segura's story, and convicted him on both counts. Thereafter, on December 3, 1999, the District Court sentenced Segura to 240 months in prison.

Segura did not file a direct appeal of his sentence or conviction. Rather, several months after the District Court imposed sentence, Segura sent a pro se letter to the District Court regarding his case. Thereafter, on April 25, 2000, the District Court filed a Notice and Order that Segura should inform the District Court whether he wanted the Court construe his letter as a petition for writ of habeas corpus. The District Court further specified that if no written directions were received within 30 days of the date of the

4

Order, the Court would disregard Segura's letter. Finally, the District Court's Order also stated that it would grant Segura 120 days to file a new, all-inclusive petition for writ of habeas corpus if he wished.

On September 25, 2000, the District Court issued a second Order, noting that Segura had sent another pro se letter to the District Court. In this letter dated August 17, 2000, Segura inquired how his appeal was progressing. After confirming that Segura had never filed any such appeal, the District Court issued an Order instructing the Clerk of Court to close Segura's case.

Segura then wrote a third letter to the District Court. In this letter dated October 19, 2000, Segura stated that he had informed his trial counsel to file a notice of appeal on his behalf. Since his trial counsel apparently failed to do so, Segura requested that the District Court appoint counsel to represent him.

On June 28, 2001, Segura filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, as well as a motion to hold his § 2255 motion in abeyance. On July 10, 2001, the District Court issued an Order stating that if Segura did not withdraw his § 2255 motion in writing within 30 days, the Court would decide the motion on the merits. Segura did not respond, and on February 22, 2002, the District Court directed the Government to respond to Segura's motion. Before the Government did so, however, Segura filed a "Clarification of All Issues Presently Before the Court," in which he claimed that his trial counsel had never advised him that he was subject to an enhanced sentence under 21 U.S.C. § 841(b). Thereafter, the Government filed its reply to Segura's

5

§ 2255 motion. In its reply, the Government argued that Segura's motion should be denied on the merits, but stated that it did not oppose granting the motion insofar as Segura sought to have new counsel appointed so that he could pursue an ineffective assistance of trial counsel claim for failing to file an appeal, as Segura allegedly had instructed his trial counsel to do.[1]

On June 26, 2003, the District Court appointed Segura a new attorney. On September 24, 2003, counsel filed a reply on Segura's behalf to the Government's answer to Segura's § 2255 motion. This reply asked the District Court to vacate its prior sentence and immediately reimpose the same sentence so that Segura could perfect his appeal to the Third Circuit; it raised no other claims and sought no other relief.

In a response dated October 10, 2003, the Government advised the District Court that it had no objection to the relief Segura sought. Accordingly, on November 12, 2003, the District Court issued an Order granting in part and denying in part Segura's § 2255 motion. The Order vacated Segura's sentence and scheduled a new sentencing hearing, but denied all other requests for relief without prejudice to his right to raise them on direct appeal.

At the sentencing hearing on December 10, 2003, Segura raised two claims for the first time. First, Segura argued that the Criminal Information charging him was defective

---

[1]In this respect, the Government noted that shortly after Segura's trial concluded, the Pennsylvania Bar Association suspended Segura's trial counsel from the practice of law for five years.

because the New Jersey case number listed in the Information did not appear in the certified record of defendant's New Jersey conviction. Second, Segura argued that the Information was defective because it mistakenly cited 21 U.S.C. § 841(b)(1)(B), which provides a mandatory minimum sentence of 10 years imprisonment upon conviction for a violation of § 841(a) involving 5 grams or more of crack where the defendant has a prior conviction for a felony drug offense, when it should have cited 21 U.S.C. § 841(b)(1)(A), which provides a mandatory minimum sentence of 20 years imprisonment upon conviction for a violation of § 841(a) involving 50 grams or more of crack where the defendant has a prior conviction for a felony drug offense. Had he known he was facing a higher mandatory minimum, Segura argues that he might have pled guilty plea rather than go to trial. The District Court directed the parties to file briefs on the issues Segura raised.

In his brief, Segura also raised a third issue; namely, that there was no evidence that the Government served the Criminal Information on Segura's trial counsel. On February 9, 2004, the Government filed its response to Segura's objections to an enhanced penalty based on the Government's purported failure to serve the Information. On that same date, the Government filed an amended "Information Charging Prior Offenses." The amended Information referenced the same prior felony conviction, but appended a certified record of that conviction. The amended Information also deleted reference to 21 U.S.C. § 841(b)(1)(B) and stated that Segura was charged with crimes involving more than 50 grams of crack.

7

On November 16, 2005, the District Court held a hearing regarding Segura's claim that the Government failed to serve the Information. At that hearing, the District Court heard testimony from the Assistant United States Attorney who filed and served the original Information. After argument by counsel, the District Court proceeded to rule on each of Segura's claims. Regarding service of the original Information, the Court concluded that the certificate of service appended to the original Information was adequate. The District Court also held that there was a presumption under law that the certificate was true and accurate, and that Segura had presented no evidence to rebut this presumption. As to the defect in the original Information, the District Court held that reversal of Segura's conviction was unwarranted because the citation to the wrong Code section was a mere "clerical error." Moreover, given that Segura knew (i) that he was charged with a violation of § 841(a)(1) involving more than 50 grams of crack; and (ii) that the Government was seeking to enhance his sentence, Segura was not prejudiced by this error. Finally, since Segura had only one prior conviction, the District Court rejected Segura's argument that because the original Information misstated the date of the prior offense by three days, Segura was somehow unaware of the prior conviction on which the Government was relying. The District Court then reimposed its original sentence -- 240 months incarceration.

Segura timely appealed. He raises in his appeal the three grounds discussed above. And, for the first time, Segura also argues that there was insufficient evidence to support his conviction for conspiracy.

## II.

Where a defendant fails to make an objection to the District Court and raises the issue for the first time on appeal, we review for plain error. United States v. Powell, 113 F.3d 464, 466-67 (3d Cir. 1997). Thus, because Segura did not file a post-trial motion for judgment of acquittal in the District Court, we review the District Court's failure to set aside Segura's conviction for plain error. We exercise plenary review over the sufficiency of the government's notice pursuant to 21 U.S.C. § 851. United States v. Weaver, 267 F.3d 231, 246 (3d Cir. 2001).

## III.

## A.

In considering a sufficiency of the evidence challenge, we must evaluate the evidence "in the light most favorable to the government and [must] affirm if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." United States v. Frorup, 963 F.2d 41, 42 (3d Cir. 1992). Moreover, because Segura did not raise this challenge post-trial, we review the District Court's failure to set aside the jury verdict for plain error. For his part, Segura argues that the Government's evidence proved at most that he and Ylsia engaged in a single sale of cocaine in which Segura was the seller and Ylsia was the buyer. This limited evidence, Segura argues, is insufficient to sustain the jury verdict against him on the conspiracy charge. For the following reasons, Segura's argument is unpersuasive.

9

To prove the existence of a conspiracy, the Government must "establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999). Once a jury has concluded that the Government has carried this burden, the defendant faces a daunting task in challenging the jury verdict on sufficiency of the evidence grounds. To sustain a verdict on appeal, "the evidence [of conspiracy] does not need to be inconsistent with every conclusion save that of guilt." United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotations omitted). Rather, the jury verdict must stand unless "the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." United States v. Anderson, 108 F.3d 478, 481 (3d Cir. 1997).

In this case, the Government presented evidence that Ylsia and Segura acted in concert to sell crack cocaine for profit. The Government's evidence showed that Segura was aware that Ylsia was seeking his assistance in obtaining crack for Officer Colon. Indeed, the evidence at trial showed that Ylsia conducted some of the negotiations with Officer Colon (on his cell phone) in front of Segura, and during this call Segura informed Ylsia that he could obtain the quantity of drugs Officer Colon requested. Moreover, Ylsia testified that Segura advised him that he (Segura) would need time to obtain additional crack for Officer Colon, and that he would call Ylsia once he had obtained the drugs, which Segura did. Thereafter, Ylsia returned to Segura's house, where Segura gave him the full amount to deliver to Officer Colon. Thus, there was ample evidence from which

10

a jury could have concluded that Segura was involved in the procurement and delivery of crack cocaine to Officer Colon.

Nor was this a mere buyer-seller relationship, as Segura contends. To begin with, Ylsia did not pay Segura for the drugs at the time Segura delivered them. The fact that Segura "fronted" Ylsia the drugs on credit is evidence of a conspiracy. Gibbs, 190 F.3d at 200 ("A credit relationship . . . often evidences the parties' mutual stake in each other's transactions."). Moreover, when Ylsia informed Segura that Officer Colon had problems with the quantity and quality of the drugs Ylsia delivered, Segura offered potential solutions that would assuage Officer Colon's concerns. Had Segura been in a mere buyer-seller relationship with Ylsia, as he claims, Segura's interest in the crack would have ended once Ylsia took possession of the drugs. See 74A (noting that, in response to Officer Colon's protests about the weight and quality of the drugs, Segura responded, "Like *we've* got time to play games.") (emphasis added). In light of the evidence, the jury was entitled to conclude that Segura had an ongoing interest in Ylsia's resale of the drugs. For all of these reasons, there was ample evidence from which the jury could have concluded that Segura had conspired with Ylsia to distribute crack. Accordingly, the District Court did not commit plain error in allowing the jury verdict to stand.

### B.

Segura's argument that the Government failed to serve adequately the Criminal Information is equally unpersuasive. At Segura's second sentencing hearing, the District Court heard testimony from the Assistant United States Attorney ("AUSA") who served

11

the original Criminal Information. The AUSA testified that, while he had no specific recollection in November 2005 of the precise manner in which he served the Information six years prior in May 1999, his typical practice was to sign the certificate of service, and then give the document to his secretary to mail or to arrange for hand delivery via a courier service. The AUSA also testified that on some occasions, he would personally serve an Information if he were going to see defense counsel that day in court. Based on this testimony, there is reason to believe that the AUSA may have personally served Segura's trial counsel: the AUSA testified that the docket indicated that on May 26, 1999 -- the date listed on the certificate of service -- both the AUSA and Segura's trial counsel attended a hearing in Segura's case. Further, absent from the record is any indication from Segura's trial counsel that he was not served with the Criminal Information. In any event, the certificate of service is itself, in the absence of contradictory evidence not present here, sufficient evidence that the Government gave the requisite notice.

In response, Segura offers only unsupported speculation that the Government's service was inadequate. Segura's lack of evidence in this regard, combined with the evidence the Government provided to show that it had in fact properly served the Criminal Information, compels the conclusion that the District Court properly rejected Segura's argument that service was insufficient.

C.

The District Court also properly rejected Segura's argument that the original Information was fatally defective because it listed the wrong date of conviction and failed

12

to list the actual offense for which Segura was convicted. Title 21, United States Code § 851 provides in pertinent part that the Government must file an Information "stating in writing the previous convictions to be relied upon." It goes on to provide that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence."[2] As the District Court noted, given (i) the minor nature of the clerical errors in the Information; and (ii) given that Segura had only one prior felony conviction, Segura hardly could have failed to perceive the offense upon which the Government was seeking an enhancement. Even making the astoundingly tenuous assumption that Segura was somehow misled by the original Information regarding his prior conviction, it is undisputed that the Government rectified all of the clerical errors in an amended Information filed before the District Court reimposed sentence. Thus, under the plain terms of § 851, Segura's argument based on the clerical errors in the Information must fail.

## D.

Finally, the District Court also properly rejected Segura's contention that the Government was precluded from seeking a mandatory minimum of 20 years on the ground that the original Information misstated the statutory provision under which the Government was seeking a sentencing enhancement. To obtain a reversal on this ground, Segura must show both that the District Court erred by allowing the flawed sentencing enhancement, and that Segura was prejudiced by this error. United States v. Toliver, 330

---

[2]It is undisputed that these mistakes are clerical in nature.

13

F.3d 607, 617 (3d Cir. 2003) (articulating standard for reversal based on non-constitutional error).  For the following reasons, Segura has failed to show either.

With respect to error, we made clear in Weaver that clerical mistakes do not render an Information invalid unless they "rendered the notice constitutionally lacking." Weaver, 267 F.3d at 247.  Further, Weaver  made clear that errors much more numerous and severe than the ones present here do not create a constitutional deficiency.  In that case, we upheld a conviction even though the Government's notice contained several errors, including mislabeling Weaver's prior conviction for "voluntary manslaughter" as "involuntary manslaughter", and mislabeling his prior conviction for robbery involving a "prohibited offensive weapon" as "armed robbery."  Id. at 247-48.  Although Segura argues that "the misstatement of the mandatory minimum is not a clerical mistake," he cites no authority for this proposition, nor does he offer any rationale sufficient to distinguish Weaver.  In view of Weaver's permissiveness, we cannot say that the typographical error here -- listing 21 U.S.C. § 841(b)(1)(B) instead of 21 U.S.C. § 841(b)(1)(A) -- renders the Information constitutionally inadequate.

While this Court has never addressed the precise question whether, for sentencing enhancement purposes, reference to the wrong statutory subsection renders a Criminal Information fatally flawed, other circuits have concluded that such clerical errors may be remedied by amending the Criminal Information before sentencing.  For instance, in United States v. Campbell, 980 F.2d 245 (4th Cir. 1992), the Fourth Circuit explained that

14

> [t]he purpose of the section 851 information is to give the person convicted and about to be sentenced as a second offender an opportunity to show that he is not the person previously convicted. No prejudice resulted from allowing the government to amend, because nowhere in section 851 is the United States Attorney required to specify which subsection he is relying on for enhancement. . . . The purpose of amendment was to correct a clerical error.

Id. at 252 (internal citations omitted).

Segura attempts to distinguish Campbell on the ground that Segura's trial counsel, unlike Campbell's attorney, did not concede that his trial strategy would have been the same even had he understood that his client was facing a mandatory minimum of twenty years rather than ten. While that may be true, there is ample evidence in the record that Segura knew or should have known the mandatory minimum he was facing before he chose to proceed to trial. Specifically, the Pretrial Detention Order explicitly stated that Segura was facing a mandatory minimum sentence of 20 years, as did the Government's Motion for a Detention Hearing and Pretrial Detention. At a minimum, then, it is clear from these documents that Segura learned some six months prior to trial that he was facing twenty years in prison -- not ten -- if convicted. For all of these reasons, the District Court did not err in permitting a sentencing enhancement based on the Criminal Information in this case.

Quite apart from this, Segura also cannot show prejudice. This is so because Segura's only argument regarding prejudice is that the Government's misstatement "affected Segura's ability to determine whether he should have entered a plea or gone to trial." App. Br. at 33. Of course, there is nothing for Segura to determine unless the

Government was willing to offer him a plea bargain, and there is no such evidence in this record. Put more colloquially, to consummate a plea bargain, it takes two to tango, and there is no reason to believe that the Government wanted to dance. See, e.g., Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir. 2000) (holding, in the context of an ineffective assistance of counsel claim, that to establish prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the Government). Finally, even if there were evidence that the Government offered Segura a plea bargain (which there is not), there is insufficient evidence that Segura would have taken the deal. To the contrary, Segura remains noncommittal even now regarding whether he would actually have accepted a plea. See App. Br. at 37 (stating that, had Segura realized he faced a twenty year minimum sentence, he "might have entered a plea agreement and cooperated with the Government. . . ."). This equivocal, after-the-fact speculation is too slender a reed to sustain Segura's claim of prejudice. Thus, even had Segura carried his burden to show that the District Court erred in this respect, he nonetheless has failed to show prejudice.

## IV.

For the foregoing reasons, we will affirm the District Court's decision in all respects.